120]    *MARTHA HUBBELL v. ADMINISTRATORS AND HEIRS OF SAM-
UEL BROADWELL ET AL.

Where the mortgagee purchases the mortgaged premises, under judicial pro-
ceedings, and continues to own them until such judicial proceedings are
reversed, the mortgagor is entitled to his right of redemption.

THIS is a suit in chancery to redeem a mortgage, reserved for
decision, from the Supreme Court of Hamilton county.

The bill states that in 1819 she united with her husband in
mortgaging to Samuel Broadwell, the defendants' intestate, certain
lands lying in Cincinnati, which she held by descent from her
father. A copy of the deed is made an exhibit, appended to the
bill, and she submits if its form is available to convey her es-
tate. Proceedings in *scire facias* were had upon this mortgage,
and in 1825 a judgment was obtained by default, and the mort-
gaged tenements purchased by Broadwell at sheriff's sale. The
record of these proceedings is made a part of this bill, and the
plaintiff insists that no valid service was made upon her, and that
she was not a party. She therefore prays if the court hold the
mortgage deed binding upon her, that she may be admitted to re-
deem the land in the hands of the representatives of Broadwell
and of Sevier, who purchased with notice.

A supplemental bill avers that in 1833 the judgment in the
*scire facias* was reversed on error since filling the original bill.

The acknowledgment of the deed is as follows : "State of Ohio,
Hamilton county, ss. Before me, the undersigned, a justice of
the peace, came Gabriel Hubbell, and Martha, his wife, who being
made acquainted with the contents, and being examined separate
and apart, acknowledged the above," etc.

Hubbell *v.* Adm'rs and Heirs of Broadwell et al.

The service of the *scire facias* is by the following indorsement upon it : " We hereby severally acknowledge service of the within writ, waiving all error as to the form of service thereof.

(Signed,) " G. HUBBELL,
MARTHA HUBBELL."

To this the sheriff added as follows : "*Scire feci*, as per acknowledgment on the back thereof." Signed by the sheriff.

The defendants demur.

Fox, for defendants :

The only question to be decided in the cause is, whether, after the reversal of a judgment of *scire facias* on a mortgage, the title to the property sold on said mortgage, can be affected by the reversal of the judgment?

*I suppose this question is decided by section 22 of the act [121 regulating judgments and executions, which declares that if any judgment shall be reversed, "such reversal shall not *affect* or *defeat the title to the purchaser* or purchasers;" and section 37 of the chancery practice act declares, that " the decree of either of the said courts, sitting as a court of chancery shall, from the time of their being pronounced, have the force, operation, and effect of a judgment at law."

These sections, I suppose, are decisive of the question, and such has been the construction put upon the statute by this court.

The purchaser, whoever he may be, is secure in his title against any errors of the court rendering the decree. No distinction is made, none ought to be made, as to the character of the purchaser. The object of the statute is to give credit to judicial sales; all the purchaser has to look to, is to see that the court had jurisdiction of the parties, and had rendered a judgment in the cause.

The object of the statute is to invite purchasers to bid, so as to insure competition. There is as much reason for encouraging the judgment-creditor to bid as any other person. It is the interest of the debtor to leave the whole field of competition open; that can not be done by making the purchase of the judgment-creditor more precarious than that of any other purchaser.

Our statute on this subject is only confirmatory of the settled practice in chancery where no such statute exists. 9 Ves. jr. 63–65; 12 Ib. 101–103; 2 Sch. & Lef. 578; 2 Caine's Cas. 262.

It was the same in sales of personal property on executions at

law, the reversal of the jugment never affected the title to the goods.

Since writing the foregoing, I have read Mr. Wright's argument. The positions he assumes are; 1. The original judgment on the *scire facias* was void; 2. That after the judgment was reversed, a right of action accrued in favor of Mrs. Hubbell, and consequently the mortgagee would have a right, in equity, to hold the land as a security for the original debt, and the mortgagee having this lien, it follows, as a matter of course, that a reciprocal right exists in the mortgagor to redeem.

As to the first position, I have only to remark, that whether the service was defective or not, is immaterial; the service was made by an officer competent to make it, and being in fact made, an irregularity of service could only be taken advantage of at the 122] *appearance term. . There being no objection made to the service at the proper time, the law presumes the objection was waived, and the judgment remains good.

The right of Mrs. Hubbell to redeem, must depend upon the effect of the reversal of the judgment after Hubbell's death. For surely it can not be pretended that, so long as the judgment remained in force, a right of redemption existed. That judgment, while in force, was a bar to foreclosure by express statute. The statute also declares, that the property sold on a judgment shall not be affected by the reversal of that judgment. But Mr. Wright appears to think that there are special circumstances attending this case that will enable the court to wink at the statute, or avoid it. I see no possible way in which this court can permit the complainant to redeem, unless by a virtual repeal of the statute referred to. As to the reversal of a decree of foreclosure reviving the right to redeem in England, it can not affect the case. And another answer is readily given, which is, that the chancellor in England will always open a decree of foreclosure at almost any period of time. So if the party sues on the bond at law, the foreclosure is by that act opened. But no case can be found in England, where the reversal of a decree for the sale of mortgaged premises, affects a sale made while the decree was in force.

I perceive no difficulty to the setting off a debt to a claim on a *scire facias* on a mortgage. This court held such a debt could be set off to the extent of the amount due on the mortgage, in the case of Piatt v. St. Clair.

WRIGHT and HODGES, for complainant:

1. The complainant insists, in the first place, that her estate in the land is not bound by the mortgage; nor by the judgment in scire facias thereon.

The mortgage is made an exhibit in the bill, and it is submitted to the court, without argument, whether it is so executed as to bind the wife's estate.

The bill avers, that in the scire facias suit there was no legal service on the present complainant, and there was no appearance by herself or husband. The facts in detail are, that there was indorsed on the writ of scire facias as follows: "We hereby severally acknowledge service of the within writ, waiving all error as to the form of service thereof. G. Hubbell, Martha *Hub- [123. bell." To which the sheriff added his return, "scire feci, as per acknowledgment on the back hereof." The judgment was entered by default without appearance.

The law required the service to be made in the presence of two freeholders in special form. We insist that a married woman, being not competent to make any agreement, can not acknowledge service, and this must stand as no service at all; and the judgment being without service of process, as to the wife, must stand as no judgment against her. If so, it can not operate to prejudice her right to redeem.

2. In the second place, if the complainant's estate is bound by the mortgage and judgment, then she insists that the land shall be sold to satisfy the mortgage debt, or that she shall be let in to redeem, after ascertaining the amount due on the mortgage.

We claim this under the peculiar nature and effect of the proceedings in scire facias, and the circumstances of this case. Had the land been sold by Samuel Broadwell, I suppose we could not reach it; but while it remains in the hands of the mortgagee, I contend that the same equity remains between him and the mortgagor as before the sale under the scire facias. This arises from the necessary operation of proceedings in scire facias, under our old law.

After the sheriff's sale under the scire facias, proceedings at law against the land are exhausted; if the judgment be then reversed, the suit can not be remanded for further proceedings, because further proceedings could only result in an award of execution to sell the land, and this is already done. The defendant then brings his

suit to recover back the money, and a recovery is matter of course, on the reversal of the judgment. At this stage of the proceedings, what are the equitable rights of the mortgagee? If the debt is really due to him, he ought not to be compelled to pay back the money to the mortgagor. In some cases, where there is no separate obligation, and no covenant for payment of the money in the mortgage, there can be no recourse against the person of the mortgagor, and then the mortgagee loses his debt utterly. But if there *is* personal recourse against the mortgagor, still the mortgagee ought not to be driven to that personal recourse only, and be deprived of the benefit of the special security of the land, or the proceeds of it. It is clearly the justice of the case, that the mortgagee should retain his security, after the reversal of the judgment. The land has been specifically pledged, and no act of 124] the court, no casualty, ought to destroy *the hold on that security, as between the original parties. If the land is gone, the fund itself should be laid hold of, in place of the land out of which it proceeded. Suppose a contrary principle to be adopted; the land has been sold under the *scire facias* for its full value, the amount credited on the *scire facias* judgment, and then the judgment is reversed, and the mortgagor recovers back the money and becomes insolvent; or he has previously become insolvent, and has assigned the claim, and his suit is prosecuted for the use of the assignee; or, as in the present case, the wife, to whom the land belongs, and who, of course, can alone recover the money, is not liable for the mortgage debt; in all these cases the mortgagee loses his debt totally, unless some principle of equity be established securing to him the benefit of his lien as it stood before the *scire facias* sale.

It has been argued that the mortgagee may set off his mortgage debt against the *scire facias* for restoration of the money, and thus obtain a benefit equivalent to his original security; but the difficulty arises of making a set-off at all, in such case. I have understood the decisions of our courts to be that our statute does not allow a set-off in such a *scire facias*. But suppose it did, it is obvious, from the cases supposed above, and others that might be suggested, that the set-off would not be a general remedy; in many cases it could not apply; there must, therefore, be some principle of equity which will do justice in all cases. What is this principle of equity? I hold it to be the following: After the

sale on the *scire facias*, the equity of the mortgagee is, that he should still retain security for his debt; he can not retain the security, unless by still treating his claim as the original mortgage debt; if so treated, the mortgagor has still the right to redeem; if one side has the equitable right to be secured out of the pledge or its proceeds, the other must have an equal right to redeem the pledge; so long as the idea of a debt and a pledge remain, the idea of redemption must remain; and these rights grow out of the original relations of the mortgagor and mortgagee, and attach on the original debt with its rights and incidents. These are clearly the equitable rights as between the mortgagor and mortgagee personally. So long as the land remains in the hands of the mortgagee, these equities attach on the land itself; if the mortgagee has sold the land, these equities are defeated by the paramount legal rights of the grantee; but as between the original parties, whatever is equity between them, in relation to the land, is equity as against the land; and the consequence *must [125* be that the mortgagor has a right to redeem the land by paying the debt.

Is there anything in our statute interfering with such a principle of equity? The statute provides that a reversal shall not "affect or defeat" the title made by the sheriff. On the grounds which I assume, I do not conflict with this provision; the title remains unimpeachable at law, a valid legal title; still, such personal equities arise out of the special circumstances in relation to the land, that this court may decree it sold or redeemed to satisfy those equities.

To test this case, let us transpose the parties; suppose the mortgagee was seeking to avoid paying back the money, in a case where certainly he could not defend himself by set-off, what relief could equity give him? They certainly could not enjoin the suit when it was prosecuted by or for one not liable for the mortgage debt; and what other possible equity could the mortgagee allege? Surely none but the equitable right to have the debt still satisfied out of the land; he can not set up the debt against the mortgagor personally, so as to be available for his protection; and the only other alternative is to set it up against the land, and this he can do only as a mortgage debt against the land. If he hold the land and pays back the money, he gets nothing toward payment of the debt; and still, if I mortgage my land for another man's debt, that debt ought

to be made out of the land. After reversal of a judgment, the general principle is, that the parties should stand in the same situation as before the judgment. Their rights stand unadjudicated, but still unprejudiced, so far as may be without affecting the rights of third persons, acquired on the faith of the judgment. The judgment being reversed, the existence of any debt is unknown to the court, because unascertained. Suppose it should turn out, on investigation, that no debt whatever was due to the mortgagee. Can it be doubted that the land ought, in equity, to be restored to the mortgagor as against the mortgagee? And this is *prima facie*, the situation of every such case before the court, after reversal, until the existence of a debt is judicially ascertained.

If the mortgagee has an equity to have his debt secured to him out of the land after the reversal, the mortgagor must of course have the reciprocal right to redeem.

Under the English equity practice of a technical foreclosure, a reversal of the decree would of course open the foreclosure; and many other acts of the mortgagee have that effect, such as suing **126]** on *the bond, etc. But if the mortgagee had sold the property after the decree of foreclosure, the title of his vendee remained perfect and absolute, and not affected by anything which would otherwise have opened the foreclosure. 3 Pow. Mort. 1006.

There are various cases where a distinction is made between cases when a party to the suit is purchaser, and when a stranger is purchaser after judgment reversed, protecting the stranger but not the party. These, however, are not decisive authority, because it is here a statutory matter. The right to redeem arises from the position in which the statutory proceeding leaves the parties after reversal. The debt, if one exists, must be regarded not merely as a debt, but a *mortgage* debt, entitled to a special privilege against the proceeds of the property, and it can not be so regarded without allowing the right of redemption.

In the present case, Mrs. Hubbell is clearly not liable for the mortgage debt. The mortgage, if valid against her, can have no other effect than merely to bind her land for the amount due when that shall be ascertained. The judgment being reversed, she has a clear right to have restitution of the money made out of her property, by virtue of the reversed judgment. Against this right to restitution, the administrators of Broadwell can not set up, by way of set-off, a debt due them from her deceased husband. That is no

debt of hers. The only defense they can make must be to file their bill in equity, and allege that they had a lien on her land, of which they ought, in good conscience, to have the benefit. Let it be especially noted that their *lien on the land* is the only foundation they can allege for their equity. Now can it for a moment be admitted that while they hold *the title of the land* and insist on retaining the entire title, they can set up a mere lien upon it in equity, as a bar against restitution of the money? The lien can give them no further equity than to have the debt satisfied out of the thing bound by it. So long, therefore, as they hold the land, and it remains in the power of the court to give them the ordinary remedy, that is, to sell so much of the thing pledged as will satisfy the debt, they can not ask any other relief. If they are entitled to such relief, it must be on a principle of equity, of which either party may claim the benefit in the first instance. This principle is simply that, in equity, all the defendants' right in the land is their lien for their debt; and this debt we must have a right to compel them to take, and leave to us the residue of the land. If this be not the equity between the parties, then we must have a restitution of the money at law; the defendants *hold the lands of Mrs. Hub- [127 bell and must look to the insolvent estate of her husband for their mortgage debt, if they have any. If the land had greatly depreciated in value, this would seem to them a very hard case, and probably would quicken their perceptions of the equity of the positions we maintain.

Judge LANE delivered the opinion of the court:

The acknowledgment of the deed, although slovenly, is well enough. It admits no sensible interpretation, except that which shows the essential requisites of the law were complied with.

It is not intended now to decide, whether a judgment, against a married woman, entered upon her written acknowledgment of service, and agreement to waive error, be void or voidable. The reversal of the judgment in *scire facias* renders it unnecessary at this time.

The demurrant principally relies upon the new rights, acquired by the sale. Without denying that the judgment of restitution on the reversal, restores the plaintiff, in most respects, to her original situation, he insists that the act regulating judgments and executions, 29 Stat. 107, sec. 22, which declares that the reversal

of a judgment shall not the affect the title of a purchaser, protects his title to the lands upon him. It is the settled policy of the court to protect judicial sales. Where lands have passed, by a sale under execution, to a stranger to the judgment, the statute compels the owner of the land, on reversal, to pursue the fruits of the sale, in the hands of his antagonist. But when a party to the judgment purchases and continues to hold, this rule does not apply with the same force. The purchaser is a party to the errors, and it seems most consonant with justice to restore the land itself to its original owner, where it remains between the original parties, and within reach of the court, no new rights intervening. 3 Pow. Mort. 1006. In the present case, where the right of redemption is restored by the reversal, it seems just to attach it to the lands, to which it was originally annexed, rather than to the ideal money produced by the sale.

Decree permitting redemption of lands in the hands of Broadwell's heirs.