A. G. TURNER et al., Appellants, v. J. O. EDMONSTON et al.

**Division Two, March 17, 1908.**

1. **WRIT OF ERROR: New Suit.** The suing out of a writ of error is practically the commencement of a new suit, and such it is regarded in this State.

2. **———: Purchaser Pendente Lite: Notice.** A monetary judgment was rendered against defendants in Roden v. Helm on March 21, 1899, and made a lien on the land. Defendant sued out a writ of error on August 28, 1900, but gave no bond and obtained no supersedeas, but served due notice of the issuing of the writ upon W. A. Edmonston, attorney for plaintiff Roden and brother to J. O. Edmonston, defendant in this suit. At a sale, under execution, on June 16, 1899, Roden became the purchaser, received a sheriff's deed, and on July 29, 1899, conveyed by quitclaim deed to W. A. Edmonston, who brought suit in ejectment in August, 1899, recovered final judgment on March 17, 1904, and on March 21, 1904, while the case of Roden v. Helm was still pending in the Supreme Court, conveyed to his brother, J. O. Edmonston, who was placed in possession by the sheriff, his deed reciting the prior sheriff's deed and Roden's deed to W. A. Edmonston. On October 25, 1905, the judgment in Roden v. Helm was reversed and the cause remanded. In that suit W. A. Edmonston was Roden's attorney. *Held,* that J. O. Edmonston was a *lis pendens* purchaser, and took the land subject to the result of the suit of Roden v. Helm.

3. **———: ———: General Rule.** A purchaser of land within the time a suit affecting the same is pending on writ of error in the Supreme Court is chargeable with legal and constructive notice that his title is subject to the result of said suit. A *lis pendens*, prosecuted in good faith, whether bond is given or supersedeas is obtained or not, is a notice to any and all purchasers that the decree therein will bind any interest in the property affected thereby that they may acquire by their purchase.

4. ———: ———: Notice: Quitclaim Deed. One who takes land under a quitclaim deed occupies the same relation thereto that the grantor did.

5. ———: ———: ———: Recital In Deed. The deed from W. A. Edmonston to defendant J. O. Edmonston, describing the land conveyed as that "conveyed to Turner as trustee for Thomas and Anna Helm and their children" and as "the same land conveyed by the sheriff to Roden" and as "the same land conveyed by Roden and wife to W. A. Edmonston," put J. O. Edmonston upon notice as to the nature of his grantor's title, and that the property was trust property, not only for Thomas and Anna Helm, but for all their children, including Mamie and Richard not made parties to the suit of Roden v. Helm then pending in the Supreme Court on writ of error, and hence he cannot claim to be a purchaser without notice, for such information, if followed up, would have given him actual knowledge of the trust.

6. ———: ———: ———: Attorney. An attorney who was plaintiff's attorney in the trial of the cause, which resulted in a judgment that was subsequently reversed on writ of error, and was cognizant of all the facts, is chargeable with notice in the same way plaintiff was; and if, while said suit was pending in the Supreme Court, without supersedeas, execution issued and plaintiff bought, and thereafter conveyed to the attorney, the attorney is not absolved from the effect of the notice by the fact that he was not plaintiff's attorney at the time he purchased the lot from him.

7. ———: ———: ———: Trustee for Beneficiaries. One who acquires property through plaintiff by purchase after judgment and execution sale to plaintiff, with notice of writ of error pending which involves the validity of the judgment, or, it being trust property, with notice of such facts as would put him upon inquiry, is chargeable with the invalidity of said judgment, and holds it in trust for the beneficiaries, and it being trust property it may be followed into his hands.

8. ESTOPPEL AND LACHES: Must Be Pleaded. Estoppel *in pais*, in order to be available, must be pleaded. Nor will laches relied upon as an estoppel be available unless pleaded.

Appeal from Audrain Circuit Court.—*Hon. Jas. D. Barnett*, Judge.

REVERSED AND REMANDED.

*F. R. Jesse* and *Robertson & Robertson* for appellants.

(1)   It is immaterial in this case whether a writ of error be a new action or a continuation of the original action for the reason that at the time J. O. Edmonston bought from his brother, W. A. Edmonston, the case of Roden v. Helm et al. was pending in the Supreme Court upon the writ of error.   Macklin v. Allenberg, 100 Mo. 337; Barber Asphalt Pav. Co. v. Young, 94 Mo. App. 204; Macklin v. Schmidt, 104 Mo. 361; Buford v. Packet Co., 3 Mo. App. 159; Bailey v. Wenn, 113 Mo. 155; Dodd v. Lee, 57 Mo. App. 167; Real Estate Savings Institution v. Collonious, 63 Mo. 290.   (2)   Again, it is immaterial whether the commencement of the new suit in Roden v. Helm et al. in the Supreme Court begins with the issuing of the writ of error or with the service of the notice of the writ under the statute, for the notice had been served and the case heard the first time and was pending for rehearing when J. O. Edmonston, the defendant herein, purchased from W. A. Edmonston.   O'Reilly v. Nicholson, 45 Mo. 160; Turner v. Babb, 60 Mo. 342; Burnham v. Smith, 82 Mo. App. 35.   (3)   W. A. Edmonston, being the attorney of Roden, and purchasing from him by quit-claim deed, stood in the shoes of Roden.   Gott v. Powell, 41 Mo. 596; Railroad v. Brown, 43 Mo. 294; Board of Trustees v. Fry & Woods, 192 Mo. 552; Galpin v. Page, 18 Wall. 375; Freeman on Judgments, sec. 484; Simonds v. Catlin, 11 Cal. 63; Stroud v. Casey, 25 Tex. 754.   (4)   The deed from W. A. Edmonston to J. O. Edmonston by its contents put the purchaser, J. O. Edmonston, upon notice as to the nature of W. A. Edmonston's title and that the property was trust property not only for Thomas and Anna Helm but for all of their children, including Mamie and Richard, not parties to the action, in Roden v. Helm et al., and having such notice, he is precluded

from defending against an action brought by the beneficiaries for the property in his hands. Paul v. Fulton, 25 Mo. 156; Coffee's Admx. v. Crouch, 28 Mo. 106; Condit v. Maxwell, 142 Mo. 266; Darling v. Potts, 118 Mo. 506. (5) The defendant, J. O. Edmonston, having purchased with notice, and having purchased pending the litigation, is bound to restore all that he had received as though he were a party to the original action of Roden v. Helm et al. Board of Trustees v. Fry & Woods, supra; Gott v. Powell, supra; Railroad v. Brown, supra; Macklin v. Allenberg, supra; DiNola v. Allison, 143 Cal. 106. (6). Had Roden, the original purchaser at the execution sale, retained the title, restitution might have been reached by a motion in the original case of Roden v. Helm et al., but as the title had been transferred in the meantime to a third person, it was necessary to resort to an independent action to enforce restitution, and ejectment is the proper remedy. Railroad v. Brown, 43 Mo. 294; Haebler v. Meyers, 132 N. Y. 363; Zimmerman v. Bank, 56 Ia. 133. (7) The reversal of the judgment annuls all orders and judgments based upon it, and the judgment entered in the case of Edmonston v. Helm et al. falls with the reversal of the judgment of Roden v. Helm et al. Where one judgment afterward reversed furnishes the foundation for a subsequent judgment, the reversal of the first judgment annuls the second judgment. Smith v. Railroad, 49 Mo. App. 54; Butler v. Eaton, 141 U. S. 240; Cowdery v. Bank, 139 Cal. 298; McAllister v. Bridges, 40 S. W. 70; Atkison v. Dixon, 96 Mo. 577.

*P. H. Cullen* and *Allen Stallings* for respondents.

(1) This cause was tried by the court without the aid of a jury and the finding of facts in dispute is as binding upon the appellate court as a verdict of a jury. Gould v. Smith, 48 Mo. 43; Gaines v. Fender, 82

Mo. 497; Irwin v. Woodmansee, 104 Mo. 403; Cook v. Farrah, 105 Mo. 492; Magee v. Burch, 108 Mo. 336; Godman v. Simmons, 113 Mo. 122; Fisher v. During, 53 Mo. App. 548; Rice v. Arnold, 58 Mo. App. 97; Baumhoff v. Railroad, 171 Mo. 120. (2) Where the trial court is intrusted with both facts and the law, this court must assume the facts to be as the court found them, and has only the power to review the law declared by such court. Swayze v. Bride, 34 Mo. App. 414; Furniture & Carpet Co. v. Davis, 86 Mo. App. 296; Curtis v. Tyler, 90 Mo. App. 345. (3) When the judgment defendant fails to give notice of appeal until after a sale of property under the judgment, and the judgment plaintiff becomes the purchaser, he is entitled to the same protection as any other *bona-fide* purchaser, if the judgment is afterwards reversed, and upon the case being remanded, he again recovers. Frazier v. Crafts, 40 Iowa 110; Gossam v. Donaldson, 68 Am. Dec. 723; Parker v. Andersen, 5 T. B. Mon. 455; Benningfield v. Reed, 8 B. Mon. 105; Yocum v. Foreman, 14 Bush 494; South Fork Canal Co. v. Gordon, 2 Abb. 488; Den v. Dellinger, 2 Murphy (5 N. C.) 272; McAusland v. Pundt, 1 Neb. 211; Tuttle v. Gates, 24 Me. 396; Stimson v. Ross, 51 Me. 556; Cariell v. Ham, 4 Greene (Iowa) 460; Holmes v. Buckner, 67 Tex. 107; Wood v. Chopin, 13 N. Y. 509; Riley v. Martinelle (Cal.), 21 L. R. A. 33 and note. (4) The purchaser is protected in the case of a sale made during the pendency of an appeal where such appeal did not operate as a supersedeas, even though the purchaser knew of the pendency of the appeal. Marks v. Cowles, 61 Ala. 299; Bank v. VanMeter, 10 B. Mon. (Ky.) 68; Rankin v. Eastin, 2 Ky. L. Rep. 427; Brenden v. Zion Church, 71 Md. 83; Garittee v. Popplein, 73 Md. 322; Henning v. Punnett, 4 Daly (N. Y.) 543; Hale v. Langford, 60 Tex. 555; 23 Am. and Eng. Ency. Law (2 Ed.), 1011; 3 Freeman on Executions, sec. 345, p.

1975. (5) A writ of error is a new suit, and not merely a continuance of the suit the judgment in which it is brought to reverse. Macklin v. Allenberg, 100 Mo. 337; Pierce v. Stinde, 11 Mo. App. 364; Irwin v. Jeffers, 3 Ohio St. 389; Phillips v. Benson, 85 Ala. 416; Gould v. Sternberg, 128 Ill. 510; Maynard v. May, 25 S. W. 879; Benson v. Yellot, 76 Md. 159; Kramer v. Wellendorf, 129 Pa. St. 547; Shannon v. Newton, 132 Pa. St. 375. (6) Where the execution creditor, after purchasing at his own sale, the judgment not having been superseded by bond, sells the property to a third person who purchases for value and without notice, and the judgment is afterward reversed on appeal, the prevailing rule is that the title of the purchaser is not affected by the reversal, and that he may retain the property as against the execution debtor. Thompson v. Wooldridge, 103 Mo. 505; Vogler v. Montgomery, 54 Mo. 577; Bartlett v. Glasscock, 4 Mo. 62; McAusland v. Pundt, 93 Am. Dec. 358; Withers v. Jacks. 12 A. S. Rep. 143; Horner v. Zimmerman, 45 Ill. 14; Gentean v. Wisely, 47 Ill. 433; Puterbaugh v. Moss, 11 N. E. 199; Graham v. Eagan, 15 La. Ann. 97.

BURGESS, J.—This is an action of ejectment for the possession of lot thirty-one of Mrs. Spark's Southern Addition to the city of Mexico, Missouri, the purpose of the suit being to enforce restitution of said property, which was sold under execution issued upon a judgment rendered in the case of Roden v. Helm et al., which judgment was, on writ of error, reversed in Division Two of this court, the case being reported in 192 Mo. 71.

The petition is in the usual form; the answer, a general denial; ouster laid March —, 1904; damages claimed, $600.

The cause was tried by the court sitting as a jury, the trial resulting in a judgment for the defendants,

from which judgment, after an unavailing motion for a new trial, plaintiffs appeal.

The facts, briefly stated, are as follows:

On March 21, 1899, Thomas F. Roden obtained a judgment against Thomas Helm, Anna S. Helm, Elizabeth Helm (now Mrs. Matthews) and A. G. Turner for $1,495.10, and the same was declared a lien upon the lot in controversy and ·some farm. land in which the said Helms had an interest, the said real estate having been deeded to said A. G. Turner, as trustee for their use and benefit. The sale, under execution, was made on the 16th day of June, 1899, and Thomas F. Roden, the judgment creditor, became the purchaser of said lands. Afterwards, on the 29th day of July, 1899, Thomas Roden, by quit-claim deed, conveyed said lands to his attorney, W. A. Edmonston, brother of the defendant herein, the consideration being $1,780. Thereafter, on August 11, 1899, W. A. Edmonston instituted two suits in ejectment for the possession of the lands described in said judgment, and obtained judgment in each case, and on March 17, 1904, said cases coming on for hearing in the Supreme Court, Division No. 1, the judgments of the lower court were affirmed, the causes being styled Edmonston v. Carter et al. and Edmonston v. Helm et al., 180 Mo. 515.

On August 28, 1900, the defendants in the case of Roden v. Helm et al. sued out a writ of error, but gave no bond nor asked for nor obtained a supersedeas in said case. Due notice of the issuing of said writ was served upon W. A. Edmonston, attorney for Roden, and holder of said quitclaim deed from Roden. The case was submitted in the Supreme Court on October 18, 1903, and afterwards, on March 23, 1904, the judgment of the lower court was affirmed. Immediately thereafter the plaintiffs in error filed motion for a rehearing, which motion was sustained and a rehearing granted on the 10th day of May, 1904. The case

was again set down for argument in Division No. 2 of this court on October 14, 1905, and thereafter, on the 25th day of October, 1905, a decision was rendered reversing the judgment of the court below, and remanding the cause.

By deed, dated March 21, 1904, and recorded July 22, 1904, said W. A. Edmonston conveyed said lands to his brother, J. O. Edmonston, the defendant herein. W. A. Edmonston was the attorney of record of Thomas Roden from the inception of the litigation, and attended the sale under execution and did the bidding for Roden. By reason of his connection with said litigation and his investigation of the records prior to the trial he became acquainted with the facts concerning the title to said lands, and with the origin and nature of the trust fund and of the deeds under which the Helms held title by their trustee, A. G. Turner.

In addition to the notice, as hereinafter pointed out, which J. O. Edmonston had of the pendency of the case of Roden v. Helm et al. in the Supreme Court, this deed of his brother to him contains the following recitals:

"All lot thirty-one (31) in Mrs. Sparks' Addition to the city of Mexico, being the same lot of realty conveyed by J. B. Miller and Maggie Miller to A. G. Turner, trustee for Thomas Helm and Anna Helm, his wife, and children of said Thomas and Anna Helm, which deed is recorded in Audrain county, Missouri, and the same lot of realty conveyed by M. N. Nelson, sheriff of Audrain county, Missouri, by Harry Atchison, deputy sheriff, to Thomas F. Roden, and recorded in Audrain county, Missouri, July 13, 1899, in Book 53, page 542, and the same lot or realty as conveyed by Thomas F. Roden and Maggie Roden, his wife, to W. A. Edmonston by deed on July 29, 1899, which deed is recorded in Audrain county, Missouri."

When the decisions in Edmonston v. Carter et al.

and Edmonston v. Helm et. al. were rendered in Division No. 1 of this court at the March term, 1904, W. A. Edmonston was in the State of Colorado, and J. O. Edmonston went with the sheriff and took possession of these lands as the agent of his absent brother, W. A. Edmonston. It appears also that J. O. Edmonston carried on a correspondence with his brother in Colorado with a view to purchasing these lands from him, and called at the office of P. H. Cullen, attorney for W. A. Edmonston, and there either read or had read to him the decisions in the Edmonston cases alluded to.

The vital question in this case is whether J. O. Edmonston was a *lis pendens* purchaser of the land from his brother, W. A. Edmonston, or, in other words, did he purchase the property with knowledge of the fact that the case of Roden v. Helm et al. was pending in the Supreme Court at the time of the purchase?

It clearly appears from the record that at the time the defendant purchased the land from his brother, W. A. Edmonston, on the 21st day of March, 1904, the case of Roden v. Helm et al. was pending in the Supreme Court; and it is immaterial in this case that it was there upon writ of error. The general rule, however, is that the suing out of a writ of error is practically the commencement of a new action, and such it is regarded in this State. [Macklin v. Allenberg, 100 Mo. 337. See, also, 2 Tidd's Prac. (3 Am. Ed.), p. 1141; Ripley v. Morris, 7 Ill. 381; Allen, Ball & Co. v. Mayor, etc., 9 Ga. 286; Robinson v. Magarity, 28 Ill. 426; Eldridge v. Walker, 80 Ill. 270; International Bank v. Jenkins, 104 Ill. 143; Pierce v. Stinde, 11 Mo. App. 364.]

Treating the suing out of the writ of error, on the 31st day of July, 1904, as the beginning of a new suit, notice thereof had been served upon W. A. Edmonston, attorney for Roden, and he appeared in the case

when it was first heard in the Supreme Court, and the case was still pending for rehearing when the defendant, J. O. Edmonston, purchased the lot from W. A. Edmonston. That the defendant was, therefore, a *lis pendens* purchaser, and took the land subject to the result of that suit, is beyond controversy. [Bailey v. Winn, 113 Mo. 155.] In O'Reilly v. Nicholson, 45 Mo. 160, it is ruled that the deed of a party *pendente lite* is void, and that even an innocent purchaser is bound by the decree that may be made against the person from whom he derives title; either directly or indirectly. [Turner v. Babb, 60 Mo. 342.]

Even though the defendant had not actual knowledge of the pendency of the suit of Roden v. Helm et al., in this court at the time he purchased the property, he is, nevertheless, chargeable with legal or constructive notice so as to render his title subject to the result of said suit. The well settled rule is that a *lis pendens*, prosecuted in good faith, is notice to any and all purchasers so as to affect and bind by the decree any interest in the property which they may acquire by reason of their purchase.

In Burnham, Munger & Co. v. Smith, 82 Mo. App. l. c. 48, it is said: "In *pendente lite* neither party to the litigation can alienate the property in dispute so as to affect his opponent. The necessities of mankind require that the decision of the court in the suit shall be binding, not only on the litigants, but also on those who derive title under them by alienation made pending the suit, whether such alienee had not notice of the proceedings." To the same effect, see Murray v. Ballou, 1 Johns. Ch. 565.

While W. A. Edmonston testified that he was not the attorney of Roden at the time of the purchase of the land and judgment from Roden, he had been his attorney during the entire litigation, and was familiar with all its details and the interests of all parties in

the land.   Moreover, he took the land under a quit-claim deed from Roden, and occupied just the same position that his client did.

In Gott v. Powell, 41 Mo. l. c. 420, it is said: "The restitution to which the party is entitled upon the reversal of an erroneous judgment is everything which is still in the possession of his adversary.   Where a man recovers land in a real action, and takes possession or acquires title to land or goods by sale under execution, and the judgment is afterwards reversed, so far as he is concerned his title is at an end, and the land or goods must be restored in specie—not the value of them, but the things themselves.   There is an exception where the sale is to a stranger *bona fide*, or where a third person has *bona fide* acquired some collateral right before the reversal.   [Bac. Abr., tit. Error, M. 13; Dater v. Railroad, 2 Hill 629; Lovett v. German Ref. Church, 12 Barb. 67; McJilton v. Love, 13 Ill. 486; Bank of U. S. v. Bank of Washington, 6 Pet. 8; Clark v. Pinney, 6 Cow. 297; Hubbel v. Broadwell, 8 Ohio 120; Green v. Stone, 1 H. & J. (Md.) 405; St. John's College v. Murcott, 77 T. R. 259.]"

In Hannibal and St. Joe R. R. Co. v. Brown, 43 Mo. l. c. 297, the court said: "When the judgment in the case of Brown v. The Hannibal and St. Joe R. R. Co., 37 Mo. 298, was reversed in this court, all of the proceedings had in pursuance of that judgment were vacated, and the defendant was entitled to be restored to the condition in which it stood previous to the judgment, and to restitution of every thing that it had lost and which remained in the hands of the adverse party, his agents, attorneys or privies.   Lander was the attorney who gave direction to the whole matter, he was cognizant of all the facts, and is therefore chargeable in the same manner as Brown himself." [Board of Trustees v. Fry and Woods, 192 Mo. 552.]

W. A. Edmonston was the attorney who obtained

the judgment for Roden, and who gave direction to the whole matter. He was cognizant of all the facts, and, therefore, chargeable with notice in the same manner as Roden himself; and the fact that he may not have been the attorney for Roden at the time he purchased the lot and judgment from him does not alter the situation or absolve him from the effect of the notice with which the law had already charged him; nor does the defendant occupy any different or better position than his grantor. Moreover, the deed under which the defendant claims title by its recitals put him upon notice as to the nature of his grantor's title, and that the property was trust property not only for Thomas and Anna Helm but for all of their children, including Mamie and Richard, not parties to the action of Roden v. Helm et al., and under such circumstances he cannot claim to be a purchaser without notice, for such information, if followed up, would have given him actual knowledge of the trust. [Condit v. Maxwell, 142 Mo. 266.] Having acquired possession of this trust property by purchase with notice, or at any rate with notice of such facts as were sufficient to put him upon inquiry, he holds the property in trust for the beneficiaries (Coffee's Admrx. v. Crouch, 28 Mo. 106); and it being trust property, it may be followed into his hands, he having taken it with notice of the true relation (Darling v. Potts, 118 Mo. 506); or, what is in effect the same thing, with notice of such facts as should put him upon his inquiry as to the trust relation. To say the least, the defendant, by the recitals in his deed, was put upon inquiry as to who the children of Thomas and Anna Helm were, what interest they had in the lot, and whether they were made parties to the proceeding the purpose of which was to divest them of their interest in the land, as well also as to the validity of the judgment under which the defendant, by mesne conveyances, acquired title.

It appears from the record that the defendant, at the time of taking possession of the lot as agent for his brother, had a conversation with one of the defendants in the case of Roden v. Helm et al. This was Mrs. Elizabeth Matthews, daughter of Thomas Helm. That in this conversation Mrs. Matthews, in the presence of the sheriff, objected to her removal from the premises and giving up possession, stating to the defendant that the case of Roden v. Helm was still pending in the Supreme Court, and that defendant said that when the court gave permission he would willingly give back the possession; that in this conversation the defendant also stated that he was acting as agent for his brother, W. A. Edmonston. Upon this evidence the plaintiffs asked the court to declare the law to be that "if the defendant went to the said premises as the agent of W. A. Edmonston to take possession of said premises for his brother, and there met Mrs. Matthews, who told him of the pending suit of Roden v. Helm et al. in the Supreme Court, or gave him such information as would put him on inquiry as to the title to the same, then the verdict will be for the plaintiffs." The court refused to so declare the law. This requested declaration presented sharply one of the vital questions in the case, that is, whether the defendant knew or was at the time of his purchase in possession of such facts as would put an ordinarily prudent man upon inquiry as to the title to the lot.

The defendant obtained the deed to the lot from his brother on the 21st day of March, 1904, just two days before the opinion in Roden v. Helm was filed in this court affirming the judgment of the trial court in that case.

Quincy James, sheriff of Audrain county, testified for plaintiffs that he was at the Helm place when possession of the property was turned over by him to the defendant, and that he there heard a conversation

between defendant and Mrs. Matthews in which she stated that she did not want to give up possession of the place, as there was a case pending in the courts and that it was not settled.

W. A. Edmonston testified in behalf of defendants that after he procured the deed to the property from Roden he presented it to Thomas Helm and demanded possession of the property, which he refused to give; that he then instituted two suits for possession, one against Helm for possession of the town property, and one against Carter et al. for the farm property, and prosecuted the suits to final judgment in the Supreme Court; that after the judgments in the circuit court in his favor, and about September 1, 1901, he went to Colorado. As to the circumstances under which he sold the property to his brother, the defendant, witness testified as follows:

"He offered me twenty-five hundred dollars, provided my ejectment suits were affirmed. I told him, provided they were affirmed, I would take $3,000, and he then wrote me again he would split the difference with me if they were affirmed, and I told him I would not do it, and then when they were affirmed, he said he would take the Helm property at $3,000. He paid me by giving me credit on a note I owed him. He then went into possession of the place. With reference to the date when the trade was finally consummated, I don't remember exactly. It seems to me I sent him the deed when we agreed upon the price, provided I won. I wrote him that I sent him the deed, and told him if it was affirmed to put the deed on record, and if it was not affirmed, or if reversed, he could send the deed back to me. I think as soon as he got possession he wrote me he had possession of the property. I told him it was my place to put him in possession of his place, and just demand possession, and I think as soon as he got possession of it the deal was con-

summated. I never received any notice of this writ of error. I investigated the title to the property before I bought from Roden. I got Mr. Cullen's opinion and examined into it well myself; there being no appeal taken, or writ of error, or stay, I considered the title was good and bought it that way. There has not been anything paid to me on either of the judgments.''

On cross-examination, witness W. A. Edmonston further testified that he had talked with Mr. Jesse, and he said they were not going to take an appeal. ''Mr. Jesse, every time I heard him express himself, said I could not take trust property. He seemed to think, because it was trust property, it could not be sold. He never used the words that the judgment was void; he always said that they could not take trust property. I spoke to him several times about paying it and avoiding the sale, and he said they could not sell trust property, but the words 'void judgment' were never used. It is only considered an erroneous judgment. I went to Mr. Turner, trying to collect the debt before we brought suit, and Mr. Turner told me it was held in trust, and Mr. Helm only got the rents and profits and that all the rents and profits had been used up. He told me it was in trust, but I have no recollection of reading the deeds.

''Q. Didn't you ask him to see the deeds and see the prior deeds under which the original trust was created? A. I do not remember about that.

''Q. And didn't he show them all to you? A. I don't remember about that; I don't think he did, because I was not caring about that. He said it ought to be paid, but he had nothing to pay it with.

''Q. And you also learned, in connection with it, there were two minor children? A. I think I knew that.''

Defendant J. O. Edmonston testified in his own behalf that he took possession of the place in April,

1904; that immediately after the Supreme Court handed down its decision he wrote his brother that the case was supposed to be ended, and to consider the deal closed; that he paid his brother $3,000 for the place by giving him credit for that amount on a note which he held against him, and that he thought the credit was of date March 18th; that he took possession of the property for his brother and in his name. He further testified as follows:

"I know I considered the deal closed, but I did not want any trouble with it, and would have nothing to do with it until the Supreme Court handed down its decision. I had not heard of the case pending between Roden and the Helms at the time I bought the place, and I knew nothing about such a case being in court. I remember having a conversation with Mrs. Matthews the day when I accompanied Mr. James, the sheriff, out to take possession of the property. I had very little conversation with Mrs. Matthews. I think the most definite thing she said was that the case had been badly managed. I said to her I had nothing to do with it, but, if I recollect right, I think she said, 'Your brother did,' and she went into the house and I remained there at the gate. Now, after she had been in there some time, Mr. James came to the front door and beckoned to me to come in. I went into the hall. Mr. and Mrs. Matthews were standing there, and Mr. James made this statement to me: 'These people will agree to vacate the house, you giving them reasonable time. They say they will vacate the house and move their goods out and turn the matter over to you as soon as they can.' I said, 'That is all right.' Now, Mrs. Matthews made a statement, as well as I recollect, and that was, 'We go out under protest; we have been advised to protest the vacation.'"

On cross-examination, the defendant further testified:

"I corresponded with my brother with a view of buying the land in the event he won the case in the Supreme Court, and as soon as I got possession under these writs of ejectment of Edmonston v. Carter, and Edmonston v. Helm, I considered the deal closed just as I had written him. I was told of the opinion of the Supreme Court. I couldn't say definitely whether Mr. Cullen showed me the decision or whether I read it or not. I know that he told me the decision had been rendered. I know that Mr. Carter told me that the court had affirmed the decision.

"Q. Mr. Cullen had a copy of the opinion there in his office, didn't he? A. I suppose he did.

"Q. And you either read it or he read it to you? A. Well, now, I could not say whether he read it, or whether I read it; I don't know about that.

"Q. Well, anyhow, you had recollection that the opinion was sustained and you got knowledge of its contents? A. I know I didn't make any demand for written representations or a written statement of it.

"Q. What I want to know is, if you saw that opinion or heard it read? A. Why, I think Mr. Cullen read it; I think that is my recollection."

This evidence fully warranted the declaration of law asked by plaintiffs, and the court should have given the same. The evidence tended to show that the defendant, before his purchase of the property from his brother, knew that the case of Roden v. Helm et al. was pending in the Supreme Court, or that he was in possession of information sufficient to put an ordinarily prudent man upon inquiry as to the title to the property. He admitted in his own testimony that he read or heard read the opinions in the cases of Edmonston v. Carter and Edmonston v. Helm, wherein the case pending upon the writ of error was referred to. From the facts recited in his deed, he must have known that the property was trust property, and he

was put upon inquiry as to who the children of Thomas and Anna Helm were and what their interest was in the property. By referring to the judgment under which his grantors acquired title, and which was alluded to in his deed, he could have discovered that two of the children were infants and were not made parties to the suit of Roden v. Helm et al., by which suit it was sought to divest them of their beneficial interest in the land. Under these circumstances, it cannot be held that the defendant was an innocent purchaser, without notice. [Condit v. Maxwell, supra.]

The conclusion reached renders it unnecessary to pass upon the points raised by the defendant in his brief, with the exception, perhaps, of the question of estoppel and laches.

Upon the question whether plaintiffs were estopped to ask relief, it is only necessary to say that estoppel *in pais,* in order to be available, must be pleaded, which was not done in this case. [Central Nat. Bank v. Doran, 109 Mo. 40; Throckmorton v. Pence, 121 Mo. 50; Thompson v. Cohen, 127 Mo. 215; Cockrill v. Hutchinson, 135 Mo. 67; State ex rel. Kansas City v. Railroad, 140 Mo. 539.] Nor, if pleaded, do the facts in evidence contain the necessary essentials of estoppel *in pais.* Neither will laches relied upon as an estoppel be available unless pleaded. [Vanderline v. Smith, 18 Mo. App. 55.]

Our conclusion is that the judgment should be reversed and the cause remanded. It is so ordered. All concur.