ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

AT THE

## OCTOBER TERM, 1911.

(Continued from Volume 161)

## H. W. KOLKMEYER, Appellant, v. J. S. MERRELL DRUG COMPANY, Respondent.

### St. Louis Court of Appeals, December 5, 1911.

1. **APPELLATE PRACTICE: Assignments of Error.** An assignment of error "that the court erred in giving judgment for defendant" cannot be sustained if plaintiff failed to prove his case in some essential particular.

2. **CHATTEL MORTGAGES: After-Acquired Property: Conversion: Proof.** Where a chattel mortgage covered a stock of goods on hand at the time it was executed only, and the mortgagor, with the consent of the mortgagee, sold from the mortgaged stock and purchased and mingled with the remainder a large quantity of new but similar stock, and continued the operation of selling, buying and re-selling from the confused mass of goods, the mortgagor, in an action for conversion of the stock on hand when the mortgage was given, brought against one who had purchased the stock after the process of selling, buying and re-selling had continued for fourteen months, was not entitled to recover, in the absence of proof that the goods on hand at the time the mortgage was executed were taken over by defendant or of proof from which the trier could draw an inference as to what proportion of the stock taken over by defendant was on hand when the mortgage was executed and what the value of such proportion was.

162 App.] (1)

3. ———: ———: Verbal Extension of Senior Mortgage: **Priority of Liens.** Where a chattel mortgage of a stock of goods did not purport to cover after-acquired goods, the fact that a verbal agreement between mortgagor and mortgagee extended the mortgage so as to cover such goods, and that a subsequent mortgage given to another person recited that it was subject to the former mortgage, did not affect the right of the subsequent mortgagee, who had no notice of the verbal agreement, to the after-acquired goods; the junior mortgage being subject to the senior mortgage as recorded only.

4. ———: ———: Priority of Liens: Conversion: Issues: **Estoppel.** In an action for conversion of a stock of goods, where plaintiff's petition stated that he was entitled to possession of the goods which were on hand at the time the owner executed a chattel mortgage on them to him, the question as to whether or not defendant, who had purchased at a foreclosure sale under a subsequent mortgage, had converted after-acquired goods was not in issue, and hence the fact that the second mortgage and the notice of foreclosure thereunder recited that the second mortgage was subject to the former mortgage did not estop defendant from denying the validity of plaintiff's mortgage as to the after-acquired goods.

5. **ESTOPPEL: Pleading.** Estoppel has no place in a case unless it is pleaded.

6. **CHATTEL MORTGAGES: After-Acquired Property: Conversion: Issues: Pleading: General Denial.** In an action for conversion, brought by the first mortgagee of a stock of goods against the second mortgagee who had foreclosed his mortgage, the latter, in order to avail himself of a defense that after-acquired goods were not covered by the first mortgage, need not plead it affirmatively, but could avail himself of it under a general denial.

Appeal from St. Louis City Circuit Court.—*Hon. William M. Kinsey,* Judge.

AFFIRMED.

*Richard P. Spencer* for appellant.

(1) The agreement between plaintiff and Barrett to keep replenished the stock of goods upon which plaintiff had a mortgage was in every respect legal and was undoubtedly good as between plaintiff and Barrett and as between them plaintiff's mortgage covered the after-acquired stock. McDonald v. Hoover, 142 Mo.

482; Mfg. Co. v. Supply Co., 149 Mo. 538. (2) The mere substitution of certain articles of merchandise in a store for other articles of the same character does not have the effect of destroying a mortgagee's lien on said stock, not even as against creditors armed with a process of law and certainly not against a junior mortgagee who took by a conveyance expressly subject to the prior mortgage. Fleisher Bros. v. Huide, 122 Mo. App. 218; Strop v. Hughs, 123 Mo. App. 557. (3) The defendant took its mortgage expressly subject to plaintiff's. The letter of defendant's attorneys to plaintiff advised plaintiff that defendant's mortgage was subject to plaintiff's; the notice of sale as published and read at the sale stated that the entire stock was to be sold subject to plaintiff's mortgage. No differentiation was ever made between the merchandise acquired before the date of defendant's mortgage and that afterwards acquired, in any of the proceedings leading up to the sale nor in the sale itself. The plaintiff was led to believe and must have believed that defendant was recognizing the validity of plaintiff's mortgage on all the stock. The defendant was estopped from denying the validity of plaintiff's mortgage on all or any part of the stock after the sale. Blodgett v. Perry, 97 Mo. 273; Shields v. McClure, 75 Mo. App. 631; Harrison v. McReynolds, 183 Mo. 549; Keeny v. McVoy, 206 Mo. 58; Freeland v. Williamson, 220 Mo. 231; Duckett v. Dry Groods Co., 99 Mo. App. 444. (4) It is true that estoppel must ordinarily be pleaded in order to be available, but in this case the court improperly permitted the defendant to endeavor to prove an affirmative defense under a general denial. The validity of our mortgage was admitted at the trial. The defense was that our mortgage did not cover after-acquired property, while theirs did, and that we, knowingly permitted their after-acquired goods to become mingled with those covered by our mortgage and, therefore, we could not complain at

defendant's taking the whole. To permit defendant, over plaintiff's objection, to prove up, or avail himself of such a defense under a general denial, was clearly an error. Mize v. Glenn, 38 Mo. App. 98; Kelerher v. Little, 203 Mo. 498; Henry v. Obear, 104 Mo. App. 590.

*Lee W. Grant* for respondent.

(1) The mortgage to plaintiff does not by its terms extend to after acquired merchandise. Its lien was, therefore, limited, in any view of the case, to such merchandise on hand as might have been part of the original stock mortgaged to it more than a year before, February 10, 1907. Neither does the parol agreement provide for the giving of a lien to plaintiff on after-acquired merchandise as between the parties. Even if it did, it would not be superior to defendant's mortgage, which is subject to the mortgage of plaintiff only as the latter mortgage is shown by the recorded instrument. For the rights of a mortgagee are those of a purchaser. Secret agreements cannot affect him. Jones Chattel Mortgages (5 Ed.), section 493. (2) Plaintiff, by his understanding with Barrett that the latter should replace stock sold with new stock, prevented himself from identifying the old stock, if any did remain. The burden is on plaintiff to separate and not on defendant, because the confusion was caused by plaintiff's own act, as was admitted by his counsel at the trial. Hamilton v. Robinson, 8 Md. 301; Bank v. Lindenstruth, 79 Md. 136; Rosenburg & Nathan v. Thompson, 10 Ky. L. 332; Simmons v. Jenkins, Admr., 76 Ill. 483.

STATEMENT.—Action for the conversion of a certain stock of drugs, etc., soda fountain and fixtures. The defendant had judgment before the trial court sitting as a jury, and the plaintiff has appealed.

Plaintiff's cause of action is set forth in his petition as follows (omitting matters of non-essential description): "Plaintiff states that on the 10th day of February, 1907, one A. E. Barrett, executed a chattel mortgage by the terms of which he, the said Barrett conveyed to this plaintiff, a certain stock of drugs, medicines, cigars and tobaccos, toilet articles, soda foundation and all fixtures and all other stock of goods *then* located in the drug store at 4501 Olive street, St. Louis, Missouri, . . . That said mortgage was to secure the payment of sixty promissory notes of even date therewith, each in the sum of twenty-five ($25) dollars . . . That the condition of the mortgage was that if said notes were paid when due, then said conveyance should be void, otherwise it should remain in full force and effect. That, according to the terms of said mortgage, the property was to remain in the possession of said Barrett, the mortgagor, but in case of failure to pay the installments of said notes as they became due respectively, . . . said mortgagee or assigns might take possession of said property . . . That on the 10th day of July, 1907, default was made in the payment of the note then falling due, and default has been made in the payment of every note falling due since that time, and that on said 10th day of July, 1907, plaintiff was and has been continuously since that time and is now entitled to the immediate possession of the stock of drugs, medicines, cigars and tobacco, toilet articles, soda fountain and fixtures, *described in said mortgage*. That said property was of the value of sixteen hundred ($1600) dollars; that afterwards, to-wit, on the 2nd day of March, 1908, *said goods* came into the possession of defendant, who then and there converted to his own use and disposed of the same, to plaintiff's damage," etc.

The answer was a general denial.

It appeared from the evidence that on February 10, 1907, one Barrett, having purchased from the plain

tiff a certain stock of drugs, etc., fixtures and soda fountain, in token of his indebtedness therefor, executed and delivered to the plaintiff the notes and chattel mortgage described in plaintiff's petition. The description in the mortgage of the property was as general as that contained in the petition. The mortgage did not purport to include after-acquired property. Plaintiff testified that when the mortgage was given there was a verbal understanding between him and Barrett that Barrett was to run the drug store as a going concern, making sales from the mortgaged stock in the usual course of business, and out of the proceeds of sale, replenish the stock and pay the notes as they became due. It is not to be inferred from the evidence that Barrett was to render any accounting to the plaintiff nor that he was to make sales on plaintiff's account. No inventory was made of the mortgaged property and no provision was made by marking or otherwise whereby it might be distinguished or kept separated from new goods purchased by Barrett.

It appears that for a short time Barrett did a flourishing business. After about a month and a half plaintiff visited the store and was informed by him that his average income was forty-three dollars a day. Barrett made purchases of considerable extent from this defendant, a wholesale drug concern. He defaulted in the payment of the notes due to plaintiff in July, 1907 and thereafter, having paid only four of the sixty notes. Plaintiff took no action on account of such default, but allowed Barrett to continue in possession, running the drug store and selling and replenishing the stock as before. From February 10, 1907, the day when the mortgage to plaintiff was made, until the last of October, 1907, Barrett bought from the defendant alone merchandise consisting of drugs, etc., to the aggregate value (at current wholesale prices) of $2285.45. His purchases from the defendant were numerous, occurring almost daily. As each

purchase was made, it was delivered to the drug store at 4501 Olive street and so commingled with the stock of drugs, etc., contained therein, including what might have been left of that which he had mortgaged to the plaintiff, that even an expert could not distinguish them.    By reason of his purchases from defendant, on November 25, 1907, Barrett owed the defendant a balance of $926.63.    For this balance, on that date, he executed and delivered to the defendant his thirteen monthly notes, twelve of which were for seventy-five dollars each, and one for twenty-six dollars and sixty-three cents.    As security therefor, on the same day he executed and delivered to the defendant a chattel mortgage conveying unto the defendant by way of mortgage all the stock and merchandise then contained in the drug store above mentioned, together with all furniture, fixtures, including soda foundation and ap-purtenances then in said store, and which might be thereafter placed therein.    By the terms of said mortgage to defendant the property was to remain in the possession of the mortgagor until default in the payment of some one or more of the notes secured thereby, whereupon the defendant or its agents might take the property or any part thereof into its possession and sell the same or any part thereof at public auction, etc., with the right to become purchaser at said sale. The said mortgage by its terms was expressly made "subject to a first mortgage of $1500 now on said property."    At the time this second mortgage was taken by the defendant the plaintiff's mortgage was of record and defendant by its treasurer had seen it and knew of it, but there is not the slightest proof that at any time before this cause came on for trial the defendant had any knowledge or notice of the verbal understanding which plaintiff testified had been had between him and Barrett.    After the second mortgage was given, Barrett continued to run the store until about March, 1908, and defendant continued to sell

him drugs, etc., which were delivered to the premises 4501 Olive street and commingled with the stock on hand. Then Barrett having defaulted in the payment of his notes to defendant, the latter took possession of the drug store and its contents and published notice that on April 2, 1908, at the drug store premises, it would make public sale of "all the property described in said mortgage consisting of furniture, fixtures, soda fountain and appurtenances and stock of merchandise contained in said store, subject, however, to a prior mortgage on the stock of merchandise and fixtures."

Before the sale the defendant's attorneys wrote a letter to the plaintiff, in part as follows: "You hold a mortgage on the drug store at Taylor and Olive street operated by Mr. Arthur E. Barrett, known as the Beethoven Pharmacy. Our clients, the J. S. Merrell Drug Co., have a mortgage on the stock and fixtures subject to your mortgage, and have taken possession, and have given notice to sell the store under the mortgage on April 2nd . . . The stock has run down to almost nothing. We think that you should be represented at the sale and if you have no one here to entrust the matter to, we will be glad to look after your interests for you. Please let us know what you will take for the balance of your debt in case we are able to find a buyer for the place."

Plaintiff was sick at his home in Jefferson City at the time he received this letter, but in response to it he sent his son down to look after the matter and represent him at the sale. At the time and place specified in the published notice, there were present plaintiff's son and two of the attorneys for the defendant, Messrs. Carroll and Kennedy; also defendant's treasurer, Henry J. Stolle, and its salesman, Frank J. Minick. Mr. Kennedy who "cried" the sale, read the published notice and parts of the mortgage and announced that while the mortgage and notice both con-

tained a clause that the stock, fixtures and soda fountain would be sold, they would not attempt to sell the fixtures or soda fountain, but would sell only the stock of merchandise. He then asked for bids, and there was only one bid by Mr. Carroll, for defendant, for $100, and after some little time, he knocked it down to Mr. Carroll for that figure. He made no sale of the fixtures or soda fountain. Defendant immediately took an inventory of the stock, excluding the fixtures and soda fountain and found that at current wholesale prices it amounted in value to $1012.40. It then caused the stock, but not the fixtures or soda fountain, to be removed to its own place of business and there commingled with its own goods of like character. The fixtures and soda fountain were left in the store No. 4501 Olive street and not disturbed or claimed by the defendant.

CAULFIELD, J. (after stating the facts).—We confine this opinion, as plaintiff's counsel has limited his argument, to a consideration of the controversy as it may affect the stock of drugs, etc., alone. Defendant exercised no control or dominion over the fixtures and soda fountain.

Plaintiff urges that "the court erred in giving judgment for the defendant." Clearly this assignment cannot be sustained if plaintiff failed to prove his case in some essential particular. Now plaintiff brought this action to recover for the conversion of the stock on hand when the mortgage was given. That is all his mortgage covered and all his petition claimed. The conversion is alleged to have occurred some fourteen months after the mortgage was given. In the meantime, with plaintiff's consent, Barrett had sold freely from the mortgaged stock in the usual course of business, and had purchased and mingled with it a large quantity of new but similar stock and sold and resold from the confused mass, without any attempt

to keep the mortgaged stock separated or distinguished from the after-acquired stock or to keep account of how much was sold of either. Not the slightest attempt was made at the trial to identify any of the goods that remained, as having been on hand when the mortgage was given; nor was any evidence furnished from which inferences might properly be drawn as to what portion of the stock covered by plaintiff's mortgage the defendant took over. There was nothing on which the trier of the fact might have based the amount of a finding for the plaintiff.. This was fatal to plaintiff's case. The confusion of goods having resulted from the selling and replenishing which he, as mortgagee, knowingly permitted, the burden was on him to show the goods embraced by the mortgage lien, which were taken over by the defendant (Rosenberry & Nathan v. Thompson, etc., 10 Ky. Law Reporter [Ky. Ct. of App. 1888] 332, 8 S. W. 895), or at least to furnish to the trier of the facts evidence from which it was authorized to draw inferences as to what proportion of the stock remaining and taken over by the defendant was on hand when the mortgage to plaintiff was given, and what the value of such proportion was. [Schmidt v. Rankin, 193 Mo. 254, 271, 91 S. W. 78.] In other words, the plaintiff not being entitled to recover the value of all the property remaining, irrespective of whether it was covered by the mortgage to him, must at least furnish some definite evidence by which the trier of the facts might fix the amount of its finding for the plaintiff, if any. That important question was not to be settled by mere guessing. Plaintiff claims, however, that by the verbal agreement with Barrett, his mortgage was extended so as to cover after-acquired property, and therefore covered the confused mass as an entirety at the time of the alleged conversion; that as defendant's mortgage recited that it was subject to plaintiff's mortgage it covered only the mortgagor Barrett's equity, whatever that might be.

Aside from the fact that plaintiff in his petition did not plead such extension of the mortgage or seek to recover for the conversion of after-acquired property, the defendant had no knowledge or notice of the verbal agreement with Barrett, but did have actual knowledge of plaintiff's mortgage as it was recorded.   The evidence convinces us that it was plaintiff's mortgage as it was recorded which was referred to in the mortgage to defendant, and none other.   The defendant was not bound by any lien, or by any extension of a lien, of which it had no notice, actual or constructive.   [Jones, Chattel Mortgages, Sec. 493.]

Plaintiff further contends that because defendant's mortgage, the letter to plaintiff, and the notice of sale, mentioned that defendant's mortgage on the stock, fixtures and soda fountain was subject to plaintiff's mortgage thereon, defendant was estopped from denying the validity of plaintiff's mortgage on all or any part of the stock after the sale.   This contention cannot avail plaintiff.   In making it he necessarily assumes that he has a right under the pleadings to recover for the conversion of after-acquired property. There is no room for that assumption.   His petition states only that he was entitled to the possession of the stock which was on hand when the mortgage to him was given and alleges the conversion of that alone. Whether defendant converted after acquired property was not in issue.   Then, too, estoppel has no place in the case because plaintiff did not plead it in his petition.   [Keeny v. McVoy, 206 Mo. 42, 59, 103 S. W. 946; Turner v. Edmonston, 210 Mo. 411, 428, 109 S. W. 33.]   In this connection plaintiff complains that the fact that his mortgage did not cover after-acquired property and that plaintiff knowingly permitted defendant's after-acquired goods to become mingled with those covered by his mortgage was a matter of affirmative defense which could not be availed of by the defendant without being affirmatively pleaded.   This is

clearly untenable. Defendant's general denial put in issue the plaintiff's necessary averment as to his right to the immediate possession of the property charged to have been converted, and anything which tended to disprove that averment might be availed of under the general denial. [Summers v. Baker, 158 Mo. App. 166, 139 S. W. 226.] The facts just mentioned had that tendency.

The judgment is affirmed. *Reynolds, P. J.,* and *Nortoni, J.,* concur.