HILTON, *Interpleader, Appellant*, v. SMITH, *Interpleader*.

134 499<br>89a 484

In Banc, June 2, 1896.

1. **Jurisdiction of Supreme Court:** REVENUE LAWS, CONSTRUCTION OF. The supreme court has appellate jurisdiction of actions involving the construction of the revenue laws of the state.

2. **Practice:** PARTIES: ACTION FOR DELINQUENT TAXES: PROCEEDING IN REM. Under Revised Statutes, 1889, section 7682 (Laws, 1877, p. 384), an action for delinquent taxes is not strictly a proceeding *in rem*. Such action must be brought against the owner of the land, but after jurisdiction of the subject-matter is thus acquired the proceeding is against the property, and the statute is satisfied if one who appears, from the record of land titles of the county to be the owner, is made a party.

3. **Tax Sale:** DEED: DELIVERY: TITLE. The title to land purchased at tax sales, under the revenue laws of 1872, does not vest in the purchaser until the delivery of the tax deed.

4. **Action for Delinquent Taxes:** PARTIES: OWNER OF LAND: STAT-UTE. A purchaser at a tax sale under the provisions of the revenue laws of 1872 for the taxes of 1874 and 1875, who is entitled to a tax deed, but has not procured and recorded it before the commencement of an action against the same land for the delinquent taxes of 1877, is not the owner of the land, within the meaning of Revised Statutes, 1889, section 7682 (Laws, 1877, p. 384), requiring such actions to be brought against "the owner of the property."

5. ————: ————: ————: SUBSEQUENT ACTION: JUDGMENT: TITLE. A purchaser at a sale of land for delinquent taxes for the years 1874 and 1875, under the laws of 1872, who was entitled to deeds, but had not procured and recorded them at the time of the commencement of another action against the same land for the taxes of 1877, will be divested of his title by a judgment in the latter action, although he was not made a party to it.

*Appeal from St. Louis City Circuit Court.*—HON. JACOB KLEIN, Judge.

REVERSED AND REMANDED.

*M. Hilton* for appellant.

(1) The fund here contended for belongs to the legal owner of the lots February 21, 1881, the date of the judgment in the condemnation proceedings. *Hilton v. St. Louis,* 99 Mo. 199. (2) At the date of the judgment in the condemnation proceedings Mary E. Tanner was the legal and equitable owner of the lots in controversy here. Florence M. Dickey was divested of her title by the proceedings in back tax cause number 300, the sheriff's deed therein vesting it in William D. Griswold, who in turn lost his title to Mary E. Tanner December 4, 1880, by sheriff's deed in back tax cause number 1193. These tax proceedings destroyed the claim of Huntington Smith, if any he had, based on tax certificates for taxes of 1874 and 1875, and vested absolute title in Mary E. Tanner. The requirements of the law that a suit to enforce a lien on land for taxes must be brought against the owner thereof, is

met and fulfilled by bringing the suit against the person who appears from the record of deeds to be the owner, in the absence of notice of the fact that such person was not the true owner, but had parted with his title by conveying it to another. This rule, however, does not require the collector to take notice of any lien or title not a proper matter of record in the recorder's office. *Payne v. Lott*, 90 Mo. 680; *Vance v. Corrigan*, 78 Mo. 94; *Hunt v. Sack*, 79 Mo. 661; *Cowell v. Gray*, 85 Mo. 169; *Evans v. Robberson*, 92 Mo. 192; *Allen v. Ray*, 96 Mo. 549. The books in the collector's office are not records within the rule laid down in *Vance v. Corrigan*, 78 Mo. 94, so that if the name of the defendant in the tax suit appears on these books as owning the land, he is to be regarded as the record owner. *Watt v. Donnell*, 80 Mo. 195; *Allen v. Ray*, 96 Mo. 542. The certificate of purchase under the law of 1872 did not confer title. *Dalton v. Fenn*, 40 Mo. 109; *Parsons v. Viets*, 96 Mo. 408. The tax title is conferred by the deed, and the deed does not even relate back to the sale. *Donohoe v. Veal*, 19 Mo. 331. The certificates of purchase gave their holder no lien on the realty. He acquired a mere claim or chose in action. *Richardson v. Lowrey*, 67 Mo. 411. The purchaser of a certificate might have his claim made a lien under section 219 of the revenue act (Wag. St. 1872) against the owner assessed with the taxes for which he bought, but not against a subsequent purchaser for taxes. Smith could not have made his claim a judgment lien under this section, against Griswold or Tanner, subsequent tax purchasers. *Smith v. Laumeier*, 12 Mo. App. 550; affirmed 84 Mo. 672. The tax titles under the law of 1877 spring from judgments made by the statute first liens on the land; hence it is, that the last valid tax title absolutely cuts out and destroys all former tax titles, and that the latest tax deed is para-

mount. *Smith v. Laumeier, supra;* Blackwell on Tax Titles, secs. 965, 968, and 969. "In a back tax case the execution goes against, and the sheriff sells the property, and not the interest of any particular person in it, and his deed conveys, in the language of the statute 'a title in fee to the purchaser.'" *Allen v. McCabe,* 93 Mo. 143. Where the evidence in a back tax cause shows a judgment against several lots which finds the amount of taxes, interest, and costs against each lot, and the execution conforms thereto, the deed thereunder passes the title, though in reciting the judgment it gives only the aggregate amount against all the lots, with the date of rendition of judgment. *Jones v. Driskill,* 94 Mo. 190–199. (3) Smith was not entitled to the three deeds issued October 1, 1880, if for no other reason than that he had permitted the lots to sell February 26, 1880, to Griswold for the taxes of 1876, and the year had not expired as required by section 210, revenue act, 1872. Hence those three deeds were issued without authority and are void. This section made it his duty to pay the taxes. *Pitkin v. Reibel,* 104 Mo. 505. (4) A conclusive answer to Smith's claim on grounds of equity is that according to the statement in his deeds he purchased the tax certificates April 10, 1879, subsequent to the rendition of judgment of back tax cause, number 300, of which he was bound to take notice.

*Joseph S. Dobyns* and *Horatio D. Wood* for respondent.

(1) At the date of the judgment in the condemnation proceeding, February 21, 1881, interpleader Huntington Smith, having duly recorded all his tax deeds in the year 1879 and 1880, was the owner of record of the lots in controversy and as such entitled

to the whole of the fund of $1,940.40 now in court.
(2) Hilton never having brought any suit against the
tax purchaser Smith to avoid these tax sales and Smith's
tax deeds having been recorded more than three years,
are now no longer open to attack, except upon the three
grounds that the taxes had been paid, or that the land
was not subject to taxation, or had been redeemed from
the sale. Session Acts, 1871–2, secs. 222 (221), 223
(222); *Hill v. Atterbury*, 88 Mo. 115; *Allen v. White*,
98 Mo. 55. (3) Back tax suits number 300 and
number 1193 were filed after the time of redemption
from the tax sales to Smith had expired and he was
entitled to his tax deeds. Sec. 217 (216). This right of
the purchaser to a deed is a vested one and so far
savors of the realty as to descend to his heirs. Black
on Tax Titles, sec. 312; 2 Blackwell on Tax Titles, sec.
963; Burroughs on Taxation, p. 322; *State ex rel. v.
Winn*, 19 Wis. 304. (4) Smith not being a defendant
in the back tax suits numbers 300 and 1193, under which
Griswold and Tanner bought, was not affected by the
judgments therein, has never had his day in court, and
his title did not pass to the purchaser at the sales there-
under. Besides the collector before bringing his suit
had actual notice of Smith's title, though not of record.
*Walcott v. Hand*, 122 Mo. 621; *Simonson v. Dolan*, 114
Mo. 176; *Blevins v. Smith*, 104 Mo. 583; *Graves v.
Ewart*, 99 Mo. 13; *Powell v. Greenstreet*, 95 Mo. 14;
*Gitchell v. Kreidler*, 84 Mo. 472; *Stafford v. Fizer*, 82
Mo. 393; *Corrigan v. Bell*, 73 Mo. 53; *Evans v. Robber-
son*, 92 Mo. 192; *Payne v. Lott*, 90 Mo. 676; *Vance v.
Corrigan*, 78 Mo. 94; *Fox v. Hall*, 74 Mo. 315; *Wutt v.
Donnell*, 85 Mo. 169. (5) Smith not having been a
defendant in the back tax suit number 1193 under
which Tanner bought was entitled to redeem. He had
also duly recorded his six tax deeds before sale in this
suit, so Tanner bought with actual notice of Smith's

ownership. *Corrigan v. Bell*, 73 Mo. 53; *Stafford v. Fizer*, 82 Mo. 393; *Cowell v. Gray*, 85 Mo. 169. (6) Smith's tax deeds, recorded October 1, 1880, were properly taken out, notwithstanding the sale to Griswold on February 26, 1880, which was more than three years after the sale to Smith in October, 1876. Besides these, deeds were issued to correct deeds already issued October, 1879, and were based on the same sale. (7) Smith was not present at the sale to Tanner and there is no evidence anyone was there either professing to act for him or having any authority to represent him, nor was there any evidence connecting him with the Griswold purchase. The Tanner sale was December 4, 1880, while Smith's deeds had long before been duly recorded in October, 1879, and October, 1880, and Tanner thus bought with record notice that the land belonged to Smith. There is no evidence or pretense that Tanner was ignorant of Smith's title or that Smith's conduct in any way misled Tanner who, instead of paying the taxes, bought at the sale with full notice that the title of the defendants in the suit had been lost and passed to Smith, and she therefore took nothing as against him. *Fox v. Hall*, 74 Mo. 315; *Vance v. Corrigan*, 78 Mo. 94; *Cowell v. Gray*, 85 Mo. 169.

DIVISION ONE.

Macfarlane, J.—The city of St. Louis, by proceedings in opening Park avenue, condemned portions of lots 5, 6, and 7, of city block, number 1282, and assessed as damages therefor the sum of $1,940.40. The money was paid into court by the city, and the two interpleaders, Hilton and Smith, each make claim to it. To which one of them the money belongs, depends upon which one was the owner of the land at the time the condemnation took place.

One Michael Brady was, as agreed, the common source of title. He died in 1868 and left surviving him his widow and four children. On the fourteenth of March, 1878, the widow, who had elected to take a child's part in the land, and who had in the meantime married one Thomas Bellew, and the children by guardian *ad litem*, commenced a proceeding for the partition of the land. A decree of partition and order of sale was rendered March 27, 1878, and on the twentieth of April, 1878, the land was sold by a commissioner to John Taylor. The sale was confirmed by the court May 2, 1878, and on the same day a deed was made to the purchaser by the commissioner.

July 3, 1878, John Taylor sold and conveyed the land to Manitho Hilton. On July 8, 1879, Hilton conveyed by quitclaim deed to Florence M. Dickey. This deed was not recorded until March 11, 1880.

On the fourteenth of July, 1879, a suit was commenced in the circuit court by the state, at the relation of the collector, against Manitho Hilton and others to enforce the state's lien for taxes on the lots for the year 1877. Judgment was rendered May 26, 1880; execution issued November 4, 1880; sale of lots was made to Mary E. Tanner, December 4, 1880; deed delivered to the purchaser December 11, 1880, and recorded January 7, 1881.

Judgment for damages on account of opening the street was entered February 22, 1881.

Florence M. Dickey assigned her interest to the fund in court to Silas D. Hilton, June 22, 1881, and he assigned to the present interpleader, Anna M. Hilton, on October 22, 1891.

Interpleader Smith claims the fund under title to the lots by virtue of several collector's deeds for taxes secured under the revenue law of 1872. But a brief abstract of these sales and deeds need be given here.

They were all under special executions upon judgments of the county court. The first was a sale of lot 5 made October 14, 1875, to N. Banks, who assigned his certificate to Smith. Deed to Huntington Smith, September 19, 1879, recorded October 1, 1879. This sale was for the taxes of 1874. A sale of lots 6 and 7 was made to N. D. Allen, at the same time, under the same judgment, for the taxes of 1874, the certificate was assigned to interpleader Smith and a deed was made to him, September 19, 1879, which was recorded also October 1, 1879. The lots were all sold again on the eleventh day of October, 1876, this time for the taxes of 1875. At this sale N. D. Allen was also the purchaser. The certificate was also assigned to said Smith to whom separate deeds for each lot were made by the collector September 19, 1879. These deeds were recorded October 1, 1879. To cure defects in these last deeds, on the twenty-ninth day of September, 1880, the collector made corrected deeds to Smith, reciting the purpose for which they were made. These new deeds were recorded October 2, 1880.

A number of objections were made to these deeds but we will assume that they were sufficient to pass the title to Smith.

This appeal involves the construction of the revenue laws of the state, hence the jurisdiction of this court.

From the foregoing statement, it appears that interpleader Smith, as assignee of the purchasers, held certificates of the purchase of these lots for the taxes of 1874 and 1875, and was entitled to deeds thereunder, at the time the back tax suit for the taxes of 1877 was commenced against Manitho Hilton and others, and, before judgment was rendered therein, had obtained deeds and put them on record. Neither Smith nor his assignor was made a party to this suit, and it is claimed

by counsel for Smith that he stood to the land in the attitude of a second mortgagee in a suit to foreclose the first mortgage, and his right to redeem was not divested by the sale.

On the other hand, counsel for interpleader Hilton claims that Smith, as the holder of matured certificates of purchase, was not an owner who is required to be made a party to the suit within the intent and meaning of the revenue act of 1877.

That act requires a suit for enforcing the lien of the state against land for delinquent taxes to be brought against "the owner of the property." Acts, 1877, p. 386, sec. 6 (R. S. 1889, sec. 7682).

In giving construction to that statute some important principles have been announced by this court which bear more or less directly upon the question here involved. It is only necessary to simply state these.

It is held that the proceeding contemplated by the law is not strictly *in rem*, and that the title acquired by the purchaser is derivative. *Graves v. Ewart*, 99 Mo. 13; *Powell v. Greenstreet*, 95 Mo. 13; *Gitchell v. Kreidler*, 84 Mo. 476.

While the owner of the land is required to be made a party to the suit, the law is satisfied if one who appears, from the records of land titles of the county, to be the owner, is made a party. *Allen v. Ray*, 96 Mo. 546, and cases cited.

The rights of mortgagees and beneficiaries in deeds of trust, whose deeds are duly recorded, are not affected by the judgment and sale unless made parties to the suit. "The purchaser at the execution sale, and his vendee, stand in the position of one having purchased under a foreclosure of a senior mortgage, the junior mortgagee not having been made a party to the suit." In such a case the mortgagee has the right to redeem.

*Williams v. Hudson*, 93 Mo. 529; *Allen v. McCabe*, 93 Mo. 144.

The inquiry here is whether the rights of interpleader Smith, which at the time of the commencement of the collector's suit for taxes, he held under his certificates of purchase, and at the time of the judgment under his collector's deeds, were foreclosed and extinguished by the judgment, sale and sheriff's deed.

The statute requires the suit to be brought against the owner of the land charged with the lien of the state for taxes. For this reason the proceedings are not strictly *in rem;* but after jurisdiction of the subject-matter is acquired the proceedings are against the property. It is said in *Allen v. McCabe, supra:* "It must be remembered, that, although the statute makes it necessary that the owner of the property should be made a party, and this is necessary to call into activity the jurisdiction of the court over the subject-matter; yet, when this is done, the proceeding is *in rem* against the property to enforce the lien of the state on that property, subordinate to which the owner holds his title; the judgment is *in rem.* The execution goes against, and the sheriff sells, the property, and not the interest of any particular person in it. And his deed conveys, in the language of the statute, 'a title in fee to the purchaser.'"

The owner, then, in contemplation of the statute, against whom the suit must be brought and thereafter prosecuted, is the actual owner, if known, or, if unknown, the apparent owner as shown by the records of land titles in the county. The law points the revenue officers of the state to these records for the evidence of ownership upon which to base their official action. The ownership includes all persons who have known or recorded interests in the land at the time the suit is commenced. The date of commencing the suit is the

time fixed for determining the ownership. Persons who have neglected to make known their ownership, by record, or otherwise, will be presumed to have notice of the pendency of the suit and will be bound by the judgment therein. The suit proceeds against the property, and the collector is not required to add and bring in new parties as they make their interests known. One holding an unrecorded instrument affecting the title to the land should not be allowed to defeat the objects of the law and obstruct the collection of the revenue by filing it for record before judgment or sale. This principle has been applied to condemnation proceedings. *Kane v. Railroad*, 112 Mo. 38.

At the time the back tax suit was commenced interpleader Smith held certificates of the purchase of the land at collector's sales for taxes levied for the years 1874 and 1875. The time allowed by the law (Wag. Stat., p. 1202, sec. 208) in which the owner could redeem had expired and he was, and for some time had been, entitled to a deed.

What title to, interest in, or lien upon land a certificate of purchase secures to the holder is a question upon which there is a difference of opinion. It may be said generally that the right is no larger than the statute gives. The law of 1872 only gives the right to the redemption money in case the land is redeemed, and to a deed when the time of redemption has expired.

In the absence of provisions of law defining the rights of the holder of a certificate of purchase the generally accepted rule is that, until the delivery of a deed, he takes no title to the land, either legal or equitable. Black on Tax Titles, sec. 322; Burroughs on Taxation, p. 321.

The rule is announced by this court in *Donohoe v. Veal*, 19 Mo. 335, 336, as follows: "If the law did not propose to give the purchaser the title to the land

until two years should elapse from the time of the purchase, then it did mean that the title should remain in the owner for that period, and the right of the purchaser was to receive his money, with a high penal interest, during the delay of redemption. It appears very clearly to be the design of these two acts, that the title of property sold for taxes shall remain undisturbed, until the deed is actually executed by the register; and that, until that act is performed, the title is in the former owner."

It was further held in that case that the doctrine of relation did not apply to such sales, and the title acquired under the deed did not relate back to any prior act or proceeding.

The law of 1857 made the certificate *prima facie* evidence of title, yet the court held that it never intended to confer title; but was mere evidence of title authorizing the purchaser to take possession of the premises for a limited period. *Clarkson v. Creely*, 40 Mo. 114.

In *Parsons v. Viets*, 96 Mo. 413, this court, in considering the rights of one holding a certificate acquired under a sale made pursuant to the laws of 1872, held that he acquired thereunder no right to the possession of the premises, and in taking possession he was a trespasser and disseizor.

After the period allowed for redemption has expired, as was the case here, the holder of the certificate has a mere naked right to demand and receive a deed from the collector. The law thereafter gives him no lien upon the land for any sum, except that, in case his title fails, he may secure a lien under section 219, 2 Wagner's Statute, page 1206. *Pitkin v. Reibel*, 104 Mo. 511.

Much reliance is placed by counsel in support of their theory, upon the decision of *Blevins v. Smith*, 104 Mo. 583. An examination of that case will show that

an entirely different question was involved, namely, whether the inchoate right of dower could be prejudiced by any act or default of the husband, and whether a judgment, sale and deed in a proceeding to enforce the state's lien for taxes, in which the husband alone is made a party, would extinguish the inchoate right of the wife to dower. The wife has a substantial right in the real estate of the husband. Though this right may not appear upon the records of land titles, one purchasing takes his title subject to it. He is conclusively presumed to have notice; so a collector, in commencing a tax suit against the husband must take notice of the dower rights of the wife in the land to be charged with the tax. That decision has no bearing on the question under consideration here.

These parties must stand or fall on their strict legal rights; but interpleader Smith does not occupy a position which demands equitable considerations, if they could be accorded him. The law under which he purchased, by the strongest implication made it his duty to pay all subsequent taxes, and he has no right to complain of a sale which resulted from his neglect of duty. Moreover, had he secured his deeds seasonably he would have been in a situation to have sought protection of his rights.

Our conclusion is that interpleader Smith was not an owner, within the meaning of the law, at the time the tax suit was commenced, and was not entitled to notice thereof; that his title only vested at the date of the delivery of the deeds to him and he took with notice of the pending suit and was bound by the judgment afterward rendered therein. *O'Reilly v. Nicholson*, 45 Mo. 166.

The judgment is therefore reversed and the cause remanded with directions to the circuit court to enter judgment in favor of interpleader Hilton. All concur.

PER CURIAM.—The foregoing opinion of MAC-FARLANE, J., handed down in division number one, is adopted as the opinion of the court *in banc*. BRACE, C. J., GANTT, SHERWOOD, BURGESS, and ROBINSON, JJ., concurring with MACFARLANE, J., therein; BAR-CLAY, J., dissenting. The judgment of the circuit court is therefore reversed and cause remanded to be proceeded with as in the opinion directed.