PEARL FERBER v. JOSEPH BRUECKL and AMALIA BRUECKL, His Wife, Appellants.—17 S. W. (2d) 524.

Division One, May 18, 1929.

*Eaken & Hagater* and *Stahl & Andrews* for appellant.

*Theodore C. Bruere* and *Hensley, Allen & Marsalek* for respondent.

ATWOOD, P. J.—This was an appeal from a judgment for plaintiff in the Circuit Court of St. Charles County to the St. Louis Court of Appeals. There the judgment was affirmed, but the St. Louis Court of Appeals, deeming its opinion to be in conflict with the opinion of the Kansas City Court of Appeals in Weaver v. Woodling, 272 S. W. 373, certified the cause to this court. After a careful consideration of this case and of the opinions rendered in both cases we are satisfied that the doctrine announced in the opinion rendered in Weaver v. Woodling, should no longer be followed. We approve the well reasoned opinion written by DAUES, P. J., and concurred in by BECKER and NIPPER, JJ., in the instant case, and, omitting the clause transferring the case to this court, we incorporate it, with slight textual changes and without using quotation marks, as and for the expression of our own views and rulings herein, as follows:

This appeal involves a determination of the question as to whether a suit suffers a discontinuance if plaintiff fails to cause an *alias* writ of summons to be issued at the return term and successive *pluries* writs at every succeeding term until the defendants can be found and served; whether, if no writ was issued between the date of the first *non est* and the date of the issuance of the last writ, such will affect the validity of the judgment though a number of terms have intervened. This question has disturbed the Bar since the decision in the case of Weaver v. Woodling, 272 S. W. 373, by the Kansas

City Court of Appeals, wherein it was held that under such circumstances the cause suffers a discontinuance.

The facts in the instant case are these:

On March 20, 1915, plaintiff obtained a judgment in the Circuit Court of St. Charles County against defendants in the sum of $1500, with interest and costs. This judgment remained unsatisfied, and on March 14, 1925, plaintiff filed a petition to revive the judgment, which was an application for the suing out of a writ of *scire facias* to revive the judgment, and on that day a writ of *scire facias* was issued directed to the Sheriff of the City of St. Louis, returnable to the next term of the Circuit Court of St. Charles County, being on the second Monday of May, 1925. The writ was in usual form, to show cause why the judgment should not be revived and the lien continued according to law. To this writ the St. Louis sheriff made a not-found return. On June 25, 1925, and during the same May term of the St. Charles County Circuit Court, that court made an order for an *alias* summons, again directed to the Sheriff of the City of St. Louis. This was returnable on the first day of the next term, to-wit at the October term. The *alias* summons was issued and nothing further appears in the record as to this *alias* summons, but the record does show that during the same term at which this summons was issued, to-wit, the May term, 1925, the Circuit Court continued the case to the next term, to-wit the October term, 1925. Thereafter, at the October term, 1925, the St. Charles Circuit Court ordered another *alias* summons directed to the same sheriff and returnable to the May term, 1926, of said court. Under the last-mentioned order the clerk of the court on January 27, 1926, being the October term, 1925, issued another or *alias* writ of *scire facias* directed to the Sheriff of the City of St. Louis, returnable to the May term, 1926, of said court. The regular February term, 1926, intervened between the October term, 1925, and the May term, 1926, to which the last-mentioned writ of *scire facias* was made returnable. There being three terms of the circuit court of said county, beginning, respectively, on the first Monday in February, the second Monday in May and the fourth Monday in October, therefore the last-mentioned *scire facias* having been issued on January 27, 1926, was issued within a few days and less than fifteen days before the beginning of the February term, 1926, and hence was made returnable to the May term, 1926. During said February term, 1926, the court duly entered an order continuing same to the next regular May term, 1926. The *scire facias* writ issued on January 27, 1926, was served on the defendants on April 27, 1926, as duly appears from the sheriff's return. Thereafter, in vacation of said court, during the May term, 1926, before the adjournment of the term, the defendants entered their special appearance and moved the court to dismiss the

cause upon the ground that the court had no jurisdiction to try same. This motion was not determined at the May term, 1926, but during that term the court again continued the cause to the October Term, 1926. At the October term, 1926, the court overruled appellants' motion to dismiss. The cause was taken up and plaintiff introduced evidence to support her right to have the judgment revived. The defendants did not appear, and the court ordered a revival of the judgment and the lien thereof, and ordered execution.

When this judgment was entered, it was discovered that the return of the Sheriff of the City of St. Louis to the writ of *scire facias* of January 27, 1926, had not been filed, and during said term the return of the sheriff was duly filed, showing service on the said writ on defendants on April 27, 1926, and it is because of the fact that the judgment of revival of December 6, 1926, was entered prior to the filing of said sheriff's return that the court set aside the judgment and on the same day entered another judgment of revival. Again the defendants moved to set aside the judgment and filed a motion in arrest of judgment. Both of these motions were overruled at the next term of said court, whereupon the defendants appealed to this court.

Riveted to the exact point, it is contended by appellants that since the record disclosed that on March 14, 1925, a petition for writ of *scire facias* to revive the judgment was filed in the clerk's office, and that the writ was issued and made returnable to the May term, 1925, of the Circuit Court, and that a *non est* return was made thereon, and that the May term, 1925, was suffered to elapse, and that not until the October term, 1925, was the *alias* writ issued returnable to the May term, 1926, that therefore the writ was improperly issued, not being issued at the term of court to which the original writ was made returnable.

Appellants rely upon the cases of Weaver v. Woodling, supra, and Mason v. Railroad, 226 Mo. 212, 125 S. W. 1128. Counsel for respondent insist, first, that the case of Weaver v. Woodling, supra, is distinguishable, and, secondly, that if not distinguishable then same should not be followed by this court. We are of the opinion that the case is not distinguishable, but we are constrained to differ with the Kansas City Court of Appeals as to the correctness of the rule there reached. We find ourselves of a directly opposite view from that expressed in that case.

The Weaver case adopts the theory that processes must be regularly continued from term to term, and if a *hiatus* intervenes between the successive processes such will operate as a discontinuance. The Kansas City Court of Appeals in that case predicated its reasoning upon the rule of the common law which at an early period fitted its practice to the position that no suitor had any individual right

to invoke the jurisdiction of the courts for the enforcement of a private right or redress for a private wrong. It was the doctrine that the right emanated from the Crown, and in order to obtain court relief a writ had to be sued out to obtain such right in the first instance. Such writs were then issued by the clerks in chancery. It was not only a notice for the defendant to appear, but operated as the Crown's mandate for the court to take jurisdiction of the case. The foundation, then, of the court's jurisdiction was this writ. So, then, it was the common-law theory that such process would have to be continued from term to term so that the court might retain jurisdiction of the case from time to time. Under such theory the plaintiff suffered a discontinuance if he failed to continue the process from term to term. It appears, however, that such discontinuance was usually avoided by a fictitious entry of continuance until the process was served. Now do we, under our practice and modern view of the law and our Statute of Jeofails, find ourselves still planted upon this ancient rule, or should we not hold that this old rule has no place in our reformed procedure which has departed from and modernized the old law of procedure and made the rule of reason fit our present practice under our statutes? We can see no foundation in reason or in our present law of procedure for the theory that processes must be continued from term to term or sued out each term in order to keep the cause alive. Our experience teaches us that such has not been the understanding of the Bar generally.

Section 1550, Revised Statutes 1919, provides, *inter alia,* that no judgment shall be reversed or affected by reason of an imperfection or defect (fifth subdivision) "for any mispleading, miscontinuance or discontinuance, insufficient pleading, jeofail or misjoining issue." We think a proper construction of that statute forces an acceptance of the view that it was there intended to avoid a suffering of a discontinuance under circumstances such as are referred to in the Weaver case, supra, and as we have before us in the case at bar.

The case of Mason v. Railroad, supra, involved the right of plaintiff to bring a new suit upon the same cause of action within one year after the demurrer was sustained to the evidence and the taking of an involuntary nonsuit.

Wetmore v. Crouch, 188 Mo. 647, 87 S. W. 954, decided, as we read it, that the statute with reference to bringing a suit after a nonsuit applied as well to voluntary as to involuntary nonsuits.

In Pitkin v. Flagg, 198 Mo. 646, 97 S. W. 162, the trial court warned plaintiff's counsel at a previous term of the failure to diligently prosecute the suit, and at such subsequent term dismissed the suit for failure to diligently prosecute. The plaintiff there had filed a *lis pendens* as to certain real estate. He was keeping the suit on

the docket without making any effort to obtain service, either personal or constructive. The Supreme Court, after reviewing the situation, said that in that sort of a case certainly the litigants were entitled to a speedy trial and that the trial court was justified in dismissing the action because the plaintiff "has shown no diligence in his prosecution." We have in mind that Section 1275, Revised Statutes 1919, provides that where there is failure to renew process at each term as to any defendant, the plaintiff may dismiss as to such defendant, and subsequently bring in such defendant as a new party and have him summoned. That still does not impel a discontinuance of the case for failure to keep process in issuance at each term.

Now in Parsons v. Hill, 15 A. D. C. 532, (District of Columbia), it is pointedly ruled that where there is a *non est* return upon an original summons, it is not necessary for the plaintiff in order to keep the suit alive to sue out successive writs of summons at interval terms or to enter continuance until the defendant can be served. The opinion is very instructive. It refers to the common-law practice, but accepts the view that there is now a very radical departure from the ancient rule, and that this was effected by the act of Congress creating the Supreme Court of the District of Columbia, giving it power to establish rules or practice. And in adopting such rule of civil procedure, the opinion declares that such modern view cannot be deemed to be antagonistic to common right when common sentiment everywhere has demanded a change as against such old rule. Our practice is very similar to the practice there, and the reasoning set forth in the Parsons case, supra, is forceful and we follow it. What purpose is served by continual and uninterrupted writs of summons when it is known they cannot be actually served? Plaintiff, for instance, knows that the defendant is away from the jurisdiction or cannot be served for other sufficient reasons. Why should plaintiff be burdened with an utterly useless endeavor and make unnecessary costs attach to the litigation when it could not possibly benefit anyone? The docket would be constantly cluttered, as that court said, with entries of conspicuous inutility. The opinion in the Parsons case is so exhaustive and complete that we are convinced after reading it that under our practice in this State, and especially under the Statute of Jeofails, we cannot hold that a discontinuance was suffered in this case.

The Parsons case was again followed in Bliss v. Duncan, 44 A. D. C. 93. While it is true, those cases are bottomed upon the rule of the Supreme Court of the District of Columbia, we think exactly the same situation arises under our Code of Civil Procedure. Nothing appears in our code, we think, which warrants holding otherwise.

We shall not discuss the argument made with reference to the distinction of the case at bar from Weaver v. Woodling, supra, because

we confess we see no distinction in so far as the point exactly decided is concerned.

We have these further observations to make, however:

It should be borne in mind that a discontinuance, generally speaking, is a failure to continue the case regularly from day to day and from term to term from the commencement of the suit until final judgment. Discontinuance results where there is a necessity of continuance to be promptly entered. The word "continuance" is defined by the lexicographers as an admission of postponement of action pending in court to a subsequent day or another term. It is not absolutely necessary to enter a continuance in every particular case; a general continuance of all cases undisposed of at the end of the term will prevent a discontinuance. It is only necessary that no disposition has been made of the case, and where the cases undisposed of at the end of the term are continued by a general order, there is no discontinuance in any sense of the word. A voluntary discontinuance is a voluntary action on the part of plaintiff whereby his case goes out of court without a decision on the merits. Now, there can be no discontinuance, or strictly speaking, involuntary discontinuance, where all cases on the docket are continued at the end of the term as being undisposed of. It may be that a litigant may not have a special order of continuance appearing of record of his particular case, and if he had not sued out an *alias* summons his case would still stand continued if all the cases are continued by the court to the next term.

18 Corpus Juris, at page 1204, section 137, recites that under the common law there would be a discontinuance where the plaintiff neglected to obtain the continuance, yet it is generally held under the codes and practice acts in the states that a failure to make an entry in the cause, except regular continuances made at the end of the term, will not work a discontinuance of the suit. [See also; Johnson v. Ditty, 7 Yerg. (Tenn.) 85; Gillespie v. Redmond, 13 Texas, 9; Ex parte Driver, 51 Ala. 41; Gilbert v. Hardwick, 11 Ga. 599.]

It appears, too, that under the common law of England and the act of Parliament as it stood at the time it adopted same, the practice relating to discontinuance had become obsolete and attention was paid to same only when defendants came in and pleaded the statute of limitation. In this event, it seems the court directed the clerk to enter fictitious entries of continuances or process from term to term, and thus cured the default. Except when the statute of limitation was involved, these implied or involuntary discontinuances arising from the failure to continue process were wholly disregarded by the courts of England. It may be that failure to keep process alive is evidence of a failure to prosecute diligently under certain circumstances,

but such failure does not in itself necessarily work a discontinuance in all cases.

Respondent's motion to dismiss the appeal has been considered and is by us overruled.

We are constrained, therefore, to sustain the lower court and to rule that the judgment must be affirmed. All concur.