WILLIAM T. ALEXANDER v. WILLIAM HAFFNER, Appellant.—20 S. W. (2d) 896.

Division One, October 14, 1929.

*Bates & Baron* for appellant.

*Frank X Hiemenz* for respondent.

RAGLAND, J.—This case comes to the writer for opinion on re-assignment. It is a statutory action at law to ascertain, determine and quiet title to "Lots 20 and 21 of block 3 of the subdivision of the Robert Walsh estate in block 3679 of the city of St. Louis, Missouri, fronting fifty feet on the south line of Garfield Avenue by a depth southwardly of one hundred and thiry-two feet to an alley." Emma Benson (formerly Emma Smith) is the agreed common source of title. On the 18th day of June, 1920, Mrs. Benson, then a widow, signed and acknowledged a warranty deed in due form, purporting to convey the said real estate to plaintiff. This deed she placed in the hands of her agent, one Abernathy, with instructions to deliver the same to the grantee when the latter paid to Abernathy for her $100, presumably the purchase price, or a part of it. Abernathy held the deed until December 31, 1920, when he filed it for record. He filed it just as soon as the $100 was paid him. After it was recorded it was delivered to plaintiff, the grantee. Immediately following the granting clause in the deed there was this recital:

"Subject, however, to the Mill Creek Sewer Tax which the purchaser agrees to assume and pay." At all the times hereinafter mentioned, *prior to the delivery of the deed, on December 31, 1920,* Mrs. Benson not only appeared from the deed records of the city of St. Louis to be the owner of the real estate in question, but she was in fact the owner.

On August 2, 1920, a suit was commenced in the Circuit Court of the City of St. Louis for the purpose of enforcing against the said lots the liens of two special tax bills, being two of a series theretofore issued by the city of St. Louis in payment of the cost of constructing "Mill Creek Joint Sewer District." The suit was brought ·by Charles W. Bates, assignee of the Carter Construction Company to whom the special tax bills had been issued, and Emma Benson, as the owner of the property, was made defendant. Thereafter, but on the same day, August 2, 1920, Bates filed with the Comptroller of the City of St. Louis a written notice, with respect to each of said tax bills, that he had commenced suit to enforce the payment or the lien thereof, as required by Section 8997, Revised Statutes 1919.

A history of the proceedings in the suit just mentioned, as narrated by the trial judge in the instant case during the hearing, from an inspection of the files in that case, is as follows:

"According to these files, the suit appears to have been filed August 2, 1920, evidenced by the filing stamp of· the clerk on the back of the petition, and on that, original summons was issued for the defendant on August 4, 1920, and bears the return of the sheriff, 'Not found.' That was to the October term, 1920. Now, there appears to have been no action taken during the October term, 1920, on the case.

"That term passed and there appears to have been no action taken at the December term, 1920. That term passed and, during the next term, the February term, 1921, it appears that an *alias* summons was issued for the defendant, March 9, 1921. That was to the April term, 1921, at which time a 'not-found' return was made by the sheriff. It then appears that there was no summons of any kind issued, but the matter laid without summons whatever until the year 1925, and on May 13, 1925, at .the April term of that year, a *pleuries* summons was issued in the same cause on the same petition and that was duly served by the sheriff on May 15, 1925, as evidenced by his return of service. Thereafter, June 8, 1925, default and inquiry was granted at the June term, 1925, followed by trial by default, June 22, 1925, and judgment for the plaintiff on the first count of the petition for $25.35 special tax bill and on the second count of the petition, $24.50 special tax bill. Those being special judgments and a lien against this specific property, which is the same property described in the petition in this suit."

Pursuant to the judgment just referred to special execution issued on the 21st day of July, 1925; a sale of the property was had thereunder on September 12, 1925; at such sale the property was sold to defendant for $200; a sheriff's deed, executed in conformity with statutory requirements and purporting to convey the lots to defend-

ant, was delivered to him on September 22, 1925; the deed was recorded by defendant on September 23, 1925.

Neither Bates, the plaintiff in the suit on the special tax bills, nor the defendant, the purchaser at the execution sale, had any actual notice of the conveyance of the lots by Mrs. Benson pending the suit, until long after the execution and delivery of the sheriff's deed just referred to.

The trial court found and adjudged that plaintiff had title in fee simple to the real estate in controversy. The case is here on defendant's appeal.

It is the contention of respondent that, inasmuch as he received from the owner a conveyance of the real estate in controversy and filed it for record prior to the sale under the special execution, his title by virtue of our recording acts is superior to that of the purchaser at such sale. The considerations from which the soundness of his contention must be determined lie within small compass.

I. Proceedings referable to provisions of the Charter of the City of St. Louis for the collection of special tax bills, like those under the statute for the enforcement of the State's lien for general taxes, are necessarily in the nature of proceedings *in rem,* because compulsory payment of the judgment can only be made by sale of the assessed property. They are in the *nature* of proceedings *in rem* because it is necessary that the owner of the property be made a party to the suit and duly notified of its pendency by summons or publication. But after that is done the action proceeds as one strictly *in rem.* [City of Clinton v. Henry County, 115 Mo. 557, 569, 22 S. W. 494; Hilton v. Smith, 134 Mo. 499, 33 S. W. 464; Barber Asphalt Paving Co. v. St. Joseph, 183 Mo. 451, 82 S. W. 64.]

The petition in the case of Bates v. Benson was filed on the 2nd day of August, 1920: the suit was therefore commenced on the 2nd day of August, 1920. [Sec. 1182, R. S. 1919; McGrath v. Railway, 128 Mo. 1, 30 S. W. 329.] Having been so commenced, it was continuously pending thereafter until the proceeding culminated in a final judgment, on June 22, 1925. The suit was against the owner of the lots charged with the liens for the enforcement of which it was brought. During its pendency plaintiff received from the owner, a party to the litigation, a conveyance of the lots—the subject-matter of the suit.

On December 31, 1920, when plaintiff paid the purchase money and received from Mrs. Benson a conveyance of the lots, there was

on file in the Comptroller's office a notice, conforming to the requirements of Section 8997, Revised Statutes 1919, that suit had been commenced to enforce the liens under the special tax bills. The notice so filed became a public record: it was in the nature of a *lis pendens* and imparted constructive notice. [Haag v. Ward, 186 Mo. 325, 85 S. W. 391.]

The deed itself through its recital that the lots were conveyed subject to the Mill Creek Sewer tax put plaintiff upon such inquiry as would have disclosed to him the pendency of the suit had it been followed up.

It thus appears that respondent at the time of his purchase had both constructive and actual notice of the pendency of the suit to enforce the liens of the special tax bills against the lots. He was therefore a *lis pendens* purchaser, and took the lots subject to the result of the suit. [Turner v. Edmondston, 210 Mo. 411, 420, 109 S. W. 33.]

Aside from the constructive notice and the actual notice, above referred to, which plaintiff had of the pendency of the suit when he purchased the lots, in buying the subject-matter of the suit he took the interest of the defendant Benson therein subject to the rule of *lis pendens* at common law. [Missouri State Life Insurance Company v. Russ, 214 S. W. 860, 863-4.]

That rule, stated in general terms, is that whoever purchases the subject-matter of a suit, *pendente lite*, whether he has notice of such pendency or not, takes his purchase subject to the decree or judgment which may be rendered in such suit. In other words, the vendee steps into the shoes of the litigant vendor and is as fully bound and concluded by the judgment, so far as the property is concerned, as the vendor himself. That the judgment, execution sale and sheriff's deed were effective to pass to the defendant the title to the lots in controversy, so far as Mrs. Benson was concerned, is not questioned by respondent. They were equally effective to pass the title as against respondent, who by his purchase merely stepped into her shoes.

Sugg v. Ducan, 238 Mo. 422, 142 S. W. 321, is cited and relied upon by respondent as supporting his position in this case. In that case it appears that a suit for general taxes was commenced against the one who from the deed records appeared to be the owner of the land. He was not, however the owner—having conveyed to another prior to the commencement of the suit. His grantee who had not at that time filed the deed for record did file it before the land was sold under the execution issued on the tax judgment. It was ruled that the execution purchaser took no title. Obviously that ruling is without influence here, the facts considered.

II. The judgment of the trial court seems to have been influenced, if not entirely controlled, by the decision of the Kansas City Court of Appeals in Weaver v. Woodling, 220 Mo. App. 970. It was ruled in that case that where an original summons is returned "not found" and the plaintiff fails thereafter to sue out successive writs from term to term, a discontinuance of the case results by operation of law, and a judgment rendered upon service subsequently had is void. At common law a discontinuance was "the chasm or interruption in proceedings occasioned by the failure of the plaintiff to continue the suit regularly from time to time, as he ought." [Bouvier's Law Dictionary, Title: Discontinuance, citing 3 Bla. Com. 296.] A technical discontinuance is unknown to our practice. A civil action under our Code is not commenced by the suing out and *service* of a writ, but by the filing of a petition "and suing out of process therein." After a suit is so commenced it is automatically continued from term to term by statute until finally disposed of by some order or judgment of the court. [Sec. 2354, R. S. 1919.] Consequently no formal entry of continuance is necessary to keep the case in court. With us, and in modern practice generally, the term "discontinuance" is used as indicating merely that plaintiff has taken a nonsuit, or that there has been a dismissal. [Thurman v. James, 48 Mo. 235, 236; Ferber v. Brueckl, 7 S. W. (2d) 279; English v. Dickey, 128 Ind. 175, 182; Germania Fire Ins. Co. v. Francis, 52 Miss. 457, 467; Parsons v. Hill, 15 App. Cas. (D. C.) 532; 9 R. C. L. sec. 2, pp. 191-2.] The ruling in Weaver v. Woodling, supra, was disapproved in Ferber v. Brueckl, 322 Mo. 892, 17 S. W. (2d) 524.

The judgment of the trial court is reversed and the cause remanded with directions to that court to enter judgment adjudging that defendant has the title in fee simple to the real estate described in plaintiff's petition and that plaintiff has no right, title or interest therein. All concur.